BENEDICTO et al. v. WEST INDIA & PANAMA TELEGRAPH CO.,
Limited, et al.

(Circuit Court of Appeals, First Circuit.   March 19, 1919.)

No. 1374.

1. COURTS &#8658;101—INJUNCTION SUIT—NUMBER OF JUDGES—PORTO RICO AS "STATE."

Porto Rico is not a state, within Judicial Code, § 266 (Comp. St. § 1243), inhibiting the granting, till hearing by three judges, of interlocutory injunction restraining action of officers under statute of states, on ground of unconstitutionality of statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, State.]

2. COURTS &#8658;438—JURISDICTION—DISTRICT COURT FOR PORTO RICO—EFFECT OF STATUTE.

The new Organic Act of Porto Rico March 2, 1917, § 41 (Comp. St. 1918, § 3803qq), providing that the United States District Court for that island shall have jurisdiction of all cases cognizable in the District Court of the United States, "and shall proceed in the same manner," is a grant of general equity power, and not intended to be qualified, relative to injunction of action under laws of the island, by Judicial Code, § 266 (Comp. St. § 1243), as to injunction of action under laws of states.

3. TERRITORIES &#8658;18—INTERSTATE COMMERCE ACT—APPLICATION TO PORTO RICO—CABLE RATES.

New Organic Act of Porto Rico March 2, 1917, § 38 (Comp. St. 1918, § 3803p), declaring that the Interstate Commerce Act and its amendments shall not apply to Porto Rico, means the local and intra-island affairs and rates, and not rates by cable lines with other countries, over which, otherwise, the Interstate Commerce Commission has jurisdiction.

4. TELEGRAPHS AND TELEPHONES &#8658;33(1)—REGULATION OF CABLE RATES—INJUNCTION.

Because the acts and threatened acts of the Public Service Commission of Porto Rico, as to reducing rates on foreign cable business, interfere with plaintiff's rights and business, and are without warrant, as well as to avoid multiplicity of suits, there is jurisdiction in equity, as against claim of adequate remedy at law.

5. INJUNCTION &#8658;114(3)—PARTIES—ACTS OF PORTO RICO COMMISSION.

The people of Porto Rico is not an indispensable party to suit to enjoin acts and threatened acts of the Public Service Commission of the island, in reducing rates on foreign cable business, interfering with plaintiff's rights and business.

6. COSTS &#8658;238(1)—ON APPEAL—NONAPPEARANCE OF APPELLEE.

Affirmance of decree will be without costs; there being no actual appearance or brief filed by appellees.

Appeal from the District Court of the United States for the District of Porto Rico.

Suit by the West India & Panama Telegraph Company and another against Jose E. Benedicto and others, composing the Public Service Commission of Porto Rico, and another, for injunction, restraining enforcement of an order for reduction of foreign cable rates. Decree for plaintiffs, and defendants appeal. Affirmed.

&#8658;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Col. Edward S. Bailey, Asst. Judge Advocate General, War Department, of Washington, D. C. (Howard L. Kern, Atty. Gen., of Porto Rico, on the brief), for appellants.

Francis H. Dexter, of San Juan, Porto Rico, for appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. We see no occasion for delaying the decision of this case by reason of the suggestion that certiorari proceedings are pending in the case of the People of Porto Rico et al. v. American Railroad Company of Porto Rico (decided by this court December 4, 1918) 254 Fed. 369, —— C. C. A. ——, as there would seem to be no sense in which that case could bear upon this, whichever way it may be decided, and that is so because, if it should be held by the Supreme Court that interstate commerce jurisdiction goes to the local affairs of Porto Rico, it would not be decisive of the questions here, and in the event of its being held that such jurisdiction does exist in Porto Rico in respect to local railroad rates, it would have no conclusive bearing, because the questions in this case differ from that, not only as to the question in respect to the three judges required by section 266 of the Judicial Code of the United States (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. § 1243]), but as to the class of commerce involved.

The decision in the People of Porto Rico v. American Railroad Company of Porto Rico was upon the ground that there were no questions there in respect to interstate, interterritorial, or interpossessional situations, with the suggestion that it was quite possible that conditions might be created in the island, through corporate and business relations, which would make its intra-insular railroad business an interterritorial or an interpossessional business, as by connecting with other territories or possessions, while in this case the rates in question sought to be regulated clearly relate to intercommunication by cable between Porto Rico, the United States, the republic of Cuba, and foreign countries, either directly or in conjunction with other lines.

[1] The point is taken that the United States District Court of Porto Rico was without power to deal with the injunction questions involved by reason of section 266 of the Judicial Code, to which reference has been made, where it is provided that no interlocutory injunction restraining the action of officers acting under statutes of states shall be granted upon unconstitutional grounds by a single justice or judge, nor until the application shall be heard and determined by three judges, or a majority of them. So we have to consider whether equity procedure in the island of Porto Rico is subject to the provisions of this section, and we think it is not.

It is quite possible, if the intent were clear, that—under rules of liberal construction, and under such cases as Metropolitan Railroad v. District of Columbia, 132 U. S. 1, 9, 10 Sup. Ct. 19, 22 (33 L. Ed. 231), where it is said, "It is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a state"—Porto Rico might be accepted as a state for certain limited purposes, but we think it not clear under the rela-

tionship which exists between the United States and that island, and without regard to whether it is strictly that of a possession or a quasi territory, that Congress intended to delegate to the local assembly authority to regulate rates in respect to instrumentalities of commerce between Porto Rico and the United States, and foreign countries.

Our view of section 266 of the Judicial Code of the United States is that its purpose was to prevent inordinate and precipitate federal interference with statutes and Constitutions of the states of the Union, which under their relations with the federal government are broadly administering their own laws, in a very substantial sense, as independent sovereignties.

We think the leading idea of Congress was in deference to the supposed independent jurisdiction of states, as such, and to safeguard their laws against hasty and inconsiderate federal interference.

We have no occasion to inquire whether section 266 might not apply to continental territories more closely related to the United States than that of the possession, or quasi territory, of Porto Rico.

Section 266, which we are considering, is, of course, so far as the states of the federal Union are concerned, a limitation upon the usual course of equity procedure as administered in the courts of the United States prior to its enactment; but the plenary power of the federal government in respect to the laws and Constitutions of the states is not, in any substantial sense, like its plenary power over a possession such as Porto Rico. Consequently, the theory of the relation between the federal government and the states of the Union does not encourage or justify the independent equity interference with the laws of the states that would be deemed reasonable, necessary, and justifiable in respect to a possession like Porto Rico.

Under the Organic Acts of Congress, the United States District Court for Porto Rico takes equity jurisdiction, in its comprehensive sense, with the authority and the duty to administer equity according to its usual and ordinary course, and we hold that view because we think that the provision in respect to three judges has reference to state statutes and Constitutions, because of the independence and peculiar relationship of the states to the federal government, and not to Porto Rico, and because the administration there of the three-judge provision would be locally inconvenient and practically inapplicable, and because it is not clear that Congress intended that interlocutory injunction questions should require the presence of three judges in primary equity proceedings in that Island.

[2] Section 41 of what is called the New Organic Act of Porto Rico provides that the United States District Court for that island "shall have jurisdiction of all cases cognizable in the District Courts of the United States, and shall proceed in the same manner" (Act March 2, 1917, c. 145, 39 Stat. 951 [Comp. St. 1918, § 3803qq]); but this we think was a grant of general equity powers, and, in conferring such general jurisdiction, that Congress did not intend to qualify it by section 266, which, as we have said, relates to the laws and the Constitutions of the states under their peculiar relations and reserved rights under the federal Constitution.

[3] It is true that the Act of March 2, 1917 (39 Stat. pt. 1, p. 964, § 38 (Comp. St. 1918, § 3803p), declares that the Interstate Commerce Act and its amendments shall not apply to Porto Rico; but this, we think, means the local and intra-island affairs and rates of Porto Rico, and not to cable lines, in respect to the rates of which parties in foreign countries and in the United States are interested.

The jurisdiction of the Interstate Commerce Commission in respect to rates is very broad, and it includes telegraph, telephone, and cable companies engaged in sending messages from one state, territory, or district of the United States to another state, territory, or district of the United States or to any foreign country.

There can be no question but that submarine lines are instrumentalities of interstate commerce, because, as said in Hopkins v. United States, 171 U. S. 597, 19 Sup. Ct. 47, 43 L. Ed. 290:

"It comprehends, as it is said, intercourse for the purposes of trade in any and all its forms, including transportation, purchase, sale and exchange of commodities between the citizens of different states, and the power to regulate it embraces all the instruments by which such commerce may be conducted."

And it was distinctly held in Pensacola Teleg. Co. v. Western Union Co., 96 U. S. 1, 24 L. Ed. 708, that the telegraph is an instrument of commerce.

Under our system of governments, if the so-called independent states of the Union create corporations which contemplate business outside of the state, their interstate commerce instrumentalities at once become subject to federal regulation and control.

Now, without regard to the strict question whether Porto Rico is a territory or a possession, and without regard to its local insular affairs, it has territorial or possessional relations with the United States, and, as said in the Didricksen Case, 227 U. S. 145, 148, 33 Sup. Ct. 224, 57 L. Ed. 456, its organization is in most essentials that of those political entities known as territories; and one of the corporations in question was organized under the laws of England, and the other under the laws of France, and they are now operating under the authority of the United States, and though seated in the island, which has a local assembly, with powers and limitations somewhat like the Legislatures of our states and continental territories, they are using their instrumentalities for the purpose of rendering service which goes outside the island, and to interstate communities, and to different possessional territorial communities, and are therefore, as we think, subject to the usual authority of the United States jurisdiction created for the regulation of service of that character.

It is highly improbable, and, we think, contrary to reason, that Congress ever intended to make an exception to its general line of policy by delegating to the local assembly of Porto Rico legislative authority and control, in respect to rates upon interpossessional or interterritorial commerce instrumentalities, an authority which, under our system, does not exist in the Legislatures of the States, and which it has not intrusted to the continental territories of the United States, like Alaska.

The simple result of this view, and this decision, is to relegate ag-

grieved parties in respect to rates upon Porto Rican instrumentalities used in interpossessional United States, and foreign commerce to the same jurisdiction and to the same tribunal that regulates interstate commerce and instrumentality rates in the United States, and like rates upon instrumentalities used between the United States, her continental territories, and foreign countries.

The conclusion is that, while Congress, under its plenary power, had the unquestionable right to do so, it never has delegated to the legislative assembly of Porto Rico authority to regulate interpossessional, interterritorial, interstate, or foreign cable rates, and that the local legislative body, therefore, was without authority to create a commission for that purpose, and that, while the Interstate Commerce Commission may not exercise jurisdiction in respect to Porto Rican intra-island rates, that it has jurisdiction over her interpossessional and foreign instruments of commerce. We think, therefore, that the District Court of the island was right in holding that the assembly was without authority over the subject-matter of cable rates.

The conclusion also is that the District Court was not under the limitation of section 266 of the Judicial Code, in respect to three judges, and that it was within its proper jurisdiction in restraining the action of the commission which reduced the rates 40 per cent., or something like it, and it being a case within its jurisdiction, and coming here on appeal from a final decree, we have no doubt of the power of this court to pass upon the propriety of the decree.

[4, 5] The appellants contend that the plaintiffs below had a full, adequate, and complete remedy at law, that the people of Porto Rico was an indispensable party, and that the District Court was therefore without jurisdiction. These contentions cannot be sustained. The acts and threatened acts of interference with the plaintiff's rights and business were, and are, as we have held, without warrant, and on that ground, as well as to avoid a multiplicity of suits, there is plainly jurisdiction in equity. Ex parte Young, 209 U. S. 123, 159, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570, and cases cited.

[6] The decree must be affirmed, but without costs because there was no actual appearance or brief filed by the appellees.

The decree of the District Court is affirmed, without costs.