74 F.Supp. 6 (1947)
UNITED STATES
v.
ROSS.
No. 25446.
District Court, E. D. Missouri, E. D.
October 30, 1947.
Drake Watson, U. S. Atty., of New London, Mo., and Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., for plaintiff.
John L. Sullivan, of St. Louis, Mo., for defendant.
*7 HULEN, District Judge.
Defendant is charged by criminal information with violation of Section 526m, Title 46 U.S.C.A., in that he "knowingly, willfully and unlawfully * * * did operate [a motorboat] in a wreckless and negligent manner so as to endanger the lives * * * of divers persons * * *." A jury was waived and the case submitted to the Court on an agreed statement of facts. The record presents two issues: (1) does the Court have jurisdiction of the subject matter by reason of the acts complained of by the Government taking place on navigable waters of the United States, and (2) is there substantial evidence to support the charge contained in the information? The Government concedes that unless the boat operated by the defendant was at the time it sunk operating on navigable waters of the United States, there is no foundation on which the Government's case can rest.
Pertinent facts are these: More than 10 years ago a drainage district built and has since maintained a levee along the west side of the Mississippi River in Lincoln County, Missouri. The levee district included lands immediately west of the Mississippi River. From the land of the drainage district soil was taken to construct the levee leaving a borrow pit east of the levee between the levee and the Mississippi River. The pit extends several miles parallel with the levee. This borrow pit varies in width from 50 feet to 200 feet and in distance from the Mississippi River from 10 feet to 100 feet. The land between the borrow pit and the Mississippi River contains vegetation and brush. There are two openings from the borrow pit to the river. They will permit an outboard motorboat to pass from the borrow pit to the Mississippi River "by using an oar or pole, but not the motor". The openings are approximately 6 feet wide and 20 feet long and at "normal" stage of the river have a depth of "about 3 feet of water" but this depth increases and decreases as the stage of the river changes. There are occasions when the river is below normal, when there is no water in either of the openings. The borrow pit is 6 or 7 feet at maximum depth. In flood stage of the Mississippi River the land between the river and the borrow pit is entirely submerged. On the borrow pit defendant was maintaining a boat dock located about 900 feet from one of the openings, from the river to the borrow pit. Defendant used the dock during the duck season and on other occasions, "approximately 12 times annually". He had used the dock for a year prior to the incident resulting in the charge. Defendant's father used the dock for the same purpose for 7 or 8 years. There is no evidence of any other use having been made of the borrow pit or the openings between the borrow pit and the river. Defendant's boat was constructed of wood, between 19 and 20 feet long, 5 feet wide, 18 inches deep, with a scow bow and square stern, powered by a 16 horsepower outboard motor. Defendant used the boat during the duck season to transport hunters to an island in the Mississippi River. He loaded his boat with 10 duck hunters and had proceeded about 100 feet from the landing when the boat sunk, resulting in the death of three of the passengers and the pending charge. The defendant would have had to travel at least 800 feet further in the borrow pit before reaching the opening to pass from the borrow pit into the Mississippi River and thence to the island to discharge the hunters.
We have stated the facts only as they bear upon the question of jurisdiction. In our judgment that issue must be decided in defendant's favor, making it unnecessary to pass on any further question presented.
As we read the authorities, whether waters are navigable so as to give United States jurisdiction depends on whether they are navigable in fact and they are navigable in fact when they are used, or are susceptible of being used, in the ordinary condition as highways for commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water. There are a number of cases in which the question of navigability of water has been raised on facts similar to those here presented. We think the case of Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914, is one. *8 Leovy was charged with "unlawfully, wilfully, knowingly," building a dam across a navigable stream of the United States. He was convicted in the trial court and his conviction was reversed by the Supreme Court. The stream across which the dam was built was known as Red Pass. It was not a natural stream but was in the nature of a crevasse, caused by the overflow of water from the Mississippi River. At one time the crevasse connected the Mississippi River with the Gulf of Mexico. Gradually the pass filled on the Gulf end and after this took place the defendant constructed the dam for the purpose of reclaiming land between the dam and the Gulf. The Government's evidence was to show that some small luggers or yawls, chiefly used by fishermen, sometimes went through the pass, but it was not shown that passengers were ever carried through it, or that freight destined to any other state than Louisiana, or any market in Louisiana, "was ever, much less habitually, carried through it." The Supreme Court, summarizing the trial court's instructions, said: "* * * the jury was not directed at all to the question of any existing interstate commerce, and that the learned judge was of opinion, and so ruled, that the physical possibility of passing by a boat out of Red Pass into the Mississippi river constituted the pass a navigable water of the United States."
This interpretation of the law by the trial court was held to be error. "Indeed, the charge necessarily implies that the defendant was guilty if there was merely a capacity for passing from Red Pass into the Mississippi river on any sort of a boat."
The Court then quotes from the case of Rowe v. Granite Bridge Corp., 21 Pick., Mass., 344, with approval: "* * * it is not `every small creek in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable.' But in order to give it the character of a navigable stream it must be generally and commonly useful to some purpose of trade or agriculture."
The Supreme Court held that before the defendant could be convicted the jury must be satisfied from the evidence "that Red Pass was at the time it was closed [dammed], as alleged in the indictment, substantially useful to some purpose of interstate commerce."
Applying this ruling to the case under submission leads to the same result. There is complete lack of proof that the borrow pit in Lincoln County was ever used by any one for navigation purposes except defendant and his father, and they used it only during the hunting season to transport duck hunters from their dock on the borrow pit to an island in the Mississippi River. And even when used for this purpose by defendant's boat, drawing only 18 inches of water, the outboard motor could not be used but the passage from the borrow pit to the Mississippi River had to be made by "using an oar or pole". During dry seasons there was no water in the passage. A portion of the borrow pit "North of the boat dock * * * is not capable of use by motorboat at `pool' stage, by reason of the presence of stumps and debris." To hold that the borrow pit, under the admitted facts, is navigable water of the United States would be to stretch the term to include every body of water, natural or artificial, which has any character or connection with a navigable stream through which a small boat can be pushed by oar or pole. We know of no authority to sustain such a holding. The case of United States v. Michael Walsh, Trading as Kelp Laboratories, 331 U.S. 432, 67 S.Ct. 1283, 1286, cited by the Government, does not so rule. The Walsh case was a prosecution under the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., and the defendant was charged with giving a false guaranty. The question of navigable waters was not in the case. The Court did say, in connection with the facts in the case, that "The commerce clause of the Constitution is not to be interpreted so as to deny to Congress the power to make effective its regulation of interstate commerce." This declaration by the Court must be understood as applying to the facts of the case in which it was made, and when so considered it has reason and logic, but to lift the sentence out of the case in which it was written and apply it to extend the power of Congress under the commerce clause to any body of water, regardless of *9 its use or susceptibility of use, would make a dead letter of that clause of the Constitution.
There are other cases which support the conclusion we have reached. The Eighth Circuit, in Harrison v. Fite, 148 F. 781, 783, held: "To meet the test of navigability as understood in the American law a water course should be susceptible of use for purposes of commerce or possess a capacity for valuable floatage in the transportation to market of the products of the country through which it runs. * * * Mere depth of water, without profitable utility, will not render a water course navigable in the legal sense, * * * nor will the fact that it is sufficient for pleasure boating or to enable hunters or fishermen to float their skiffs or canoes. To be navigable a water course must have a useful capacity as a public highway of transportation." (Emphasis added.)
See also Kerr v. West Shore R. Co., 127 N.Y. 269, 27 N.E. 833, 835. In the Kerr case the court held that a bay off a navigable stream was not navigable in the ordinary meaning of the term and that because a vessel of light draft might at certain stages of the tide get nearer to the shore by use of the bay "does not make it, in a general sense, a navigable part of the river."
In State ex rel. Matson v. Superior Court of Skagit County, 42 Wash. 491, 85 P. 264, the court held that a slough, dry during the greater portion of the year, except during high tide, at which time it was navigable for a short distance for small craft, was not navigable water so as to come under the jurisdiction of the Federal Government.
The Supreme Court of Michigan, in Winans v. Willetts, 197 Mich. 512, 163 N.W. 993, held that a lake, covering 100 acres of land, and having an outlet connecting it indirectly with Huron River through which small boats could be floated, was not a public navigable body of water but a privately owned pond. See also 45 C.J. pp. 403-413.
Our conclusion does not mean that under the facts of the case the defendant is free of responsibility for the death of the three hunters, resulting from the sinking of defendant's boat, or of criminal negligence. This phase of the case we do not pass upon. Prosecution for a charge of the general character set out in the information might properly be initiated by the state under state statutes, but the location of the commission of the act constituting the offense charged does not give the Federal Government jurisdiction in this case.

Judgment
The information against the defendant will be and is dismissed and the defendant stands discharged.