## STAINBACK, GOVERNOR OF THE TERRITORY OF HAWAII, ET AL. v. MO HOCK KE LOK PO, AN ELEEMOSYNARY CORPORATION, ET AL.

NO. 52.

Argued January 11–12, 1949.—Decided March 14, 1949.

*Thomas W. Flynn,* Deputy Attorney General of Hawaii, argued the cause for appellants in No. 52. With him on the brief in No. 52 and the petition in No. 474

were *Walter D. Ackerman, Jr.,* Attorney General of Hawaii, *Rhoda V. Lewis,* Assistant Attorney General, and *C. Nils Tavares. Pauline Day Bakst* and *Robert B. Griffith,* Deputy Attorneys General, were also on the brief in No. 52.

*A. L. Wirin* and *Wai Yuen Char* argued the cause for appellees in No. 52. With them on the briefs in Nos. 52 and 474 were *James M. Mortia* and *Fred Okrand.*

Briefs of *amici curiae* urging affirmance were filed by *Phineas Indritz* and *Paul Dobin* for the American Veterans Committee; *Osmond K. Fraenkel* and *Frank E. Karelsen, Jr.* for the American Civil Liberties Union; *William Maslow, Shad Polier* and *Leo Pfeffer* for the American Jewish Congress; *Arthur Goldberg* and *Frank Donner* for the Congress of Industrial Organizations; and *Edward J. Ennis* and *Saburo Kido* for the Japanese American Citizens League.

MR. JUSTICE REED delivered the opinion of the Court.

The appeal in No. 52, *Stainback, Governor of the Territory of Hawaii, et al.* v. *Mo Hock Ke Lok Po, An Eleemosynary Corporation, et al.,* and the petition for writ of certiorari in No. 474, a case with the same short title, seek review of a judgment of the United States District Court for the District of Hawaii. This judgment was entered by a special three-judge court that was called pursuant to Judicial Code § 266, and by that section's provision was brought directly here on May 7, 1948, in case No. 52. To guard against a frustration of review by this Court's refusal to accept jurisdiction, a timely appeal by the appellants here in No. 52 has been taken by them in No. 474 to the Court of Appeals for the Ninth Circuit. No judgment on that appeal has been entered by the Court of Appeals; and appellants there, the Governor of Hawaii *et al.,* petitioned here on December 21, 1948, for

the allowance of a writ of certiorari under 28 U. S. C. § 1254 (1).[1]

A jurisdictional question as to whether Judicial Code § 266 was applicable in the Territory of Hawaii arises in No. 52. It was postponed by order of this Court on June 1, 1948, to the hearing of that case on the merits. This Court postponed action on the petition for certiorari in No. 474 until the hearing of No. 52 on the merits. As the record, arguments and briefs here and the opinions below fully present the case decided by the District Court, to avoid further futile proceedings we now grant the petition for the writ of certiorari to the Court of Appeals before its decree and proceed in No. 474 to a review of the judgment of the District Court of Hawaii. The opinions appear in 74 F. Supp. 852, *Mo Hock Ke Lok Po* v. *Stainback*.

Respondents here were plaintiffs in the trial court. They are Chinese School Associations, a Chinese school, all giving instruction in Chinese, and a teacher of Chinese in Chinese language schools. After December 7, 1941, these schools closed and have not reopened. Prior to that date they had more than 2,000 pupils, several hundred of whom were in the first and second grade, and numerous teachers. Under Judicial Code § 266 they sought an injunction against officers of the Territory of Hawaii charged by law with the administration of an Act of the Territory "Regulating the Teaching of Foreign Languages to Children," [2] from enforcing it in any particular against

---

[1] "§ 1254. Courts of appeals; certiorari; appeal; certified questions

"Cases in the courts of appeals may be reviewed by the Supreme Court by the following methods:

"(1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree; . . . ."

[2] Session Laws of Hawaii 1943, Act 104; Revised Laws of Hawaii 1945, c. 31.

the teaching of foreign languages to the respondents' pupils.

The Act was grounded on a legislative finding "that the study and persistent use of foreign languages by children of average intelligence in their early and formative years definitely detract from their ability properly to understand and assimilate their normal studies in the English language." Revised Laws of Hawaii (1945), § 1871. "School" was defined as any teaching regularly of two or more persons in a group.[3] Requirements for pupils and teachers in foreign language schools were set out.[4] Visitation of the foreign language schools by appropriate officials for enforcement purposes was authorized. § 1875. The only sanction for enforcement is by injunction.[5]

---

[3] "Sec. 1872. Definitions. As used in this chapter:

" 'School' means any person, firm, group of persons, unincorporated association, corporation, establishment, or institution, which teaches, with or without fees, compensation or other charges therefor, any language other than the English language, as a course of study, to two or more persons as a group, as a regular and customary practice."

[4] "No child shall be taught a foreign language in any school unless he shall comply with one of the following requirements: (a) That he shall have passed the fourth grade in public school or its equivalent, and shall pass from time to time in each succeeding grade a standard test in English composition and reading conducted by or under the direction of the department of public instruction attaining a score not lower than normal for his grade; or (b) that he shall have passed the eighth grade in public school or its equivalent; or (c) that he shall have attained the age of fifteen years." R. L. Haw. 1945, § 1873.

"No school shall permit the teaching of any foreign language to any child under the age of fifteen unless the teacher shall have been examined and certified by a board of examiners of three persons appointed by the commissioners of public instruction to be reasonably well versed in the usage and idiom of both the English language and the foreign language to be taught by such teacher. . . ." R. L. Haw. 1945, § 1874.

[5] "Sec. 1876. Injunctive enforcement. In the event any school or any person shall be found to be violating, or failing to comply with any of the requirements of, this chapter, or there shall be reasonable

This lack of coercion by fine or imprisonment and the limitation of enforcement to injunction are important factors in our conclusion upon No. 474.

The complaint alleged that in violation of the Fifth Amendment the Act deprived plaintiff schools of the right to manage their property by contracting with instructors and parents for the teaching of Chinese, and the plaintiff teacher of Chinese of his right to follow his occupation.[6] See *Farrington* v. *Tokushige,* 273 U. S. 284, 299. The judgment of the special district court granted a sweeping permanent injunction against enforcement of the Hawaiian Act. As our conclusions are based solely upon procedural issues, any further discussion of the facts or of the law applicable to the merits is not appropriate.

cause to believe that such school or person is violating, or failing to comply with the requirements of, this chapter, the attorney general, at his own instance or at the request of the department of public instruction, shall institute appropriate proceedings in equity in the circuit in which the violation occurs to enjoin the performance of any acts or practices forbidden by this chapter, or to require such school or person to comply with the requirements of this chapter. Jurisdiction to hear and dispose of all actions under this section is hereby conferred upon each circuit judge, and each such judge shall have power to issue such orders and decrees, by way of injunction, mandatory injunction or otherwise, as may be appropriate to enforce the provisions of this chapter. In the event any respondent or respondents shall fail or refuse to comply with any such order or decree, the court, in addition to any other powers hereby granted, shall have power to enjoin the operation and conduct of such school until and unless this chapter is complied with or satisfactory assurance is given that this chapter will be complied with. The county attorney of each county shall, at the request of the attorney general, conduct such proceeding in behalf of the Territory. All such suits shall be brought in the name of the Territory by the attorney general." R. L. Haw. 1945.

[6] There was a further allegation of a denial to plaintiffs of rights under 8 U. S. C. §§ 41, 42, 43. This was not considered by the District Court or relied upon in brief or argument here. We do not consider it.

The complaint asked for and obtained a three-judge court under the provisions of the Judicial Code § 266.[7] The minute entries of proceedings and trial and the opinion re applicability of § 266, Judicial Code, 74 F. Supp. at

[7] 28 U. S. C. § 380 (see redistribution without change of importance in this case, 28 U. S. C. §§ 1253, 2101, 2281, 2284, as revised by the Act of June 25, 1948, 62 Stat. 928, 964, 968, effective September 1, 1948):

"No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, . . . shall be issued or granted . . . unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, . . . . Whenever such application as aforesaid is presented to a justice of the Supreme Court, or to a judge, he shall immediately call to his assistance to hear and determine the application two other judges: . . . . An appeal may be taken direct to the Supreme Court of the United States from the order granting or denying, after notice and hearing, an interlocutory injunction in such case. . . . The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court; and a direct appeal to the Supreme Court may be taken from a final decree granting or denying a permanent injunction in such suit."

An interlocutory injunction was sought in the complaint, filed June 26, 1947, but the record presented to us does not show that one was issued although the final injunction was not issued until February 11, 1948. An opinion on the applicability of Judicial Code § 266, filed October 22, 1947, says that "All pertinent adjective prerequisites specified by the Supreme Court in Ayrshire Collieries Corporation v. United States, 331 U. S. 132, . . . and in Farrington v. T. Tokushige, supra, necessary to make operative three judge participation in the instant suit have occurred. An interlocutory injunction has been sought and passed to a hearing in the District Court at Honolulu and a substantial federal question of transcending limitations of the 5th Amendment to the Constitution has been sufficiently alleged in the Amended Complaint." 74 F. Supp. 858, 859.

Despite appellants' suggestion that the application for an interlocutory injunction was not pressed, we think that in view of this

858, show suggestions that a special district court under Judicial Code § 266 cannot be called for Hawaii. The statement of jurisdiction laid bare the problem with commendable frankness. It lies at the threshold of any consideration of this appeal.[8]

Within the present decade, this Court summarized in *Phillips* v. *United States,* 312 U. S. 246, the purpose and effect of § 266 and extracted from its history and the precedents for the section's application a congressional requirement of strict construction to protect our appellate docket while assuring the states that exceptionally careful judicial consideration would guard them against all assaults, through federal courts, against their legislative statutes or administrative board orders by applications for injunction when those assaults were based on the Federal Constitution. Pp. 250–51. While we take judicial notice that since the *Phillips* case air carriage has brought Hawaii closer to the continent,[9] the interference with the normal adjudicatory and appellate processes of the federal judicial system and our docket persists. The power

language it would be hypercritical for us to dismiss this appeal for failure of the record to show more definitely that the prayer for an interlocutory judgment was pressed. But see *Healy* v. *Ratta,* 289 U. S. 701, where the correspondence file in this Court shows receipt of a supplemental record containing a formal waiver of prayer for temporary relief. *Ayrshire Corp.* v. *United States, supra,* at 140; *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10. Compare 28 U. S. C. § 1253 and 28 U. S. C. (1946 ed., Supp. II) pp. 1444, 1453, showing repeal and redistribution of Judicial Code § 266. We therefore assume that the quoted statement from the District Court opinion establishes that the request for an interlocuory injunction was pressed on that court.

[8] *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10, 13; *Phillips* v. *United States,* 312 U. S. 246, 248.

[9] Air travel to Hawaii is recognized by the Administrative Office of the United States Courts as a necessary travel expense for judges under 28 U. S. C. § 604 (7).

to call a panel of judges under § 266 in Hawaii is to be examined in the light of the *Phillips* case.

Hawaii is still a territory but a territory in which the Constitution and laws of the United States generally are applicable. 31 Stat. 141, § 5, as amended 48 U. S. C. § 495; *Duncan* v. *Kahanamoku,* 327 U. S. 304, 317. Not only its federal courts but also its territorial courts are of course subject to congressional legislation. 48 U. S. C. § 631, *et seq.* The Organic Act for Hawaii, § 86,[10] provided in 1900:

> "That there shall be established in said Territory a district court to consist of one judge, . . . . Said court shall have, in addition to the ordinary jurisdiction of district courts of the United States, jurisdiction of all cases cognizable in a circuit court of the United States, and shall proceed therein in the same manner as a circuit court; . . . ." 31 Stat. 158.

When incorporated into the Code, this Court was given "the jurisdiction of district courts of the United States, and shall proceed therein in the same manner as a district court." 48 U. S. C. § 642. It now has that jurisdiction.[11] The only change that could be considered significant is the more definite integration of the district court for Hawaii into the federal judicial system by definition.[12] As jurisdiction of this Court on appeal depends upon whether or not a special three-judge court was properly called[13] and not upon the power of this Court to review under

---

[10] 31 Stat. 158.

[11] 28 U. S. C. §§ 451, 91, 1331–59; see 28 U. S. C. § 41; sec. 8, Act of June 25, 1948, 62 Stat. 986. Note arrangement for Alaska, *id.,* sec. 9, at p. 986.

[12] See Reviser's Notes to 28 U. S. C. §§ 1291, 1292. Cf. *Mookini* v. *United States,* 303 U. S. 201.

[13] *Rorick* v. *Board of Commissioners of Everglades Drainage District,* 307 U. S. 208, 212.

Judicial Code § 266, we need not analyze the method of review of the judgments of the District Court of Hawaii.[14]

Our issue is narrowed to the inquiry of whether Congress intended that Judicial Code § 266 should apply in the Territory of Hawaii under circumstances that would require its application in a similar suit in a state. Congress in discussing an amendment to the Mann-Elkins Act, which amendment evolved into this section, considered the geographical difficulties inherent in the requirement of a three-judge court and the burden thus placed on the functioning of the federal judicial system, but decided that such considerations were outweighed by the desirability of having the constitutionality of a state statute passed on by a court comparable to the court of last resort of the state. 45 Cong. Rec. 7253–57. It is to be noted that nowhere in § 266 is mention made of territories nor as far as has been called to our attention in the congressional debates and reports relating to this section and its amendments.

While, of course, great respect is to be paid to the enactments of a territorial legislature by all courts as it is to the adjudications of territorial courts,[15] the predominant reason for the enactment of Judicial Code § 266 does not exist as respects territories. This reason was a con-

---

[14] Review of the judgments of the district court for Hawaii was allowed in the Organic Act by § 86 to the ninth judicial circuit in the same manner as from the then circuit courts to the circuit courts of appeals. This was adjusted to conform to the elimination of the circuit courts by Judicial Code § 128 as amended. See 48 U. S. C. § 645. Since this appeal was taken, the revision of the United States Code, Title 28, §§ 1291, 1294, has become effective. Under Judicial Code § 266 this Court had direct review, Judicial Code §§ 128, 238, at the time of appeal and still has. 28 U. S. C. § 1253 as revised effective September 1, 1948.

[15] *Waialua Co.* v. *Christian,* 305 U. S. 91, 108; *De Castro* v. *Board of Comm'rs,* 322 U. S. 451, 455.

gressional purpose to avoid unnecessary interference with the laws of a sovereign state.[16]  In our dual system of government, the position of the state as sovereign over matters not ruled by the Constitution requires a deference to state legislative action beyond that required for the laws of a territory.[17]  A territory is subject to congressional regulation.[18]

When the long-established rule of strict construction of Judicial Code § 266 and that of protection of the docket of this Court is also considered in conjunction with the necessary interference with the normal operations of the federal judicial system by the establishment of the three-judge requirement in Hawaii, we are not persuaded that Congress intended § 266 to cover Hawaii.  See 45 Cong. Rec. 7253–57.  Despite its generality the words of § 266 have been strictly construed so that "statute of a State" does not include ordinances; "officer of such State" means one with authority to execute or administer a state-wide policy.[19]

It is not merely the absence of the word "territory" from § 266 that leads us to this conclusion.  We recognize that in some situations the word "state" includes territory.  *Andres* v. *United States,* 333 U. S. 740.  In that

---

[16] *Ex parte Collins,* 277 U. S. 565, 567–569.

[17] Although Judicial Code § 266 originated in 1910, 36 Stat. 539, 557, it was not until 1937 that the requirement of a three-judge district court to hear applications for injunctions against the enforcement of Acts of Congress was enacted.  50 Stat. 751, 752.

[18] Const., Art. IV, § 3, cl. 2.

[19] To the cases on strict construction of § 266 cited in *Phillips* v. *United States, supra,* add *City of Cleveland* v. *United States,* 323 U. S. 329; *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89; *Public Nat. Bank of New York* v. *Keating,* 29 F. 2d 621; *City of Des Moines* v. *Des Moines Gas Co.,* 264 F. 506; *Calhoun* v. *City of Seattle,* 215 F. 226; *Cumberland Telephone & Telegraph Co.* v. *City of Memphis,* 198 F. 955.

case we thought the purpose of Congress would be frustrated by a holding that the word "state" in a federal statute providing for execution of a criminal in "the manner prescribed by the laws of the State within which the sentence is imposed" did not include "Territory." There we held state included territory.[20]   Here the purpose of the statute to protect state sovereignty is not furthered by an interpretation of state to include territory.

A former opinion of this Court lends strength to this interpretation.   In *Farrington* v. *Tokushige*, 273 U. S. 284, decided in the United States District Court of Hawaii on July 21, 1925, a temporary injunction forbidding territorial officers from enforcing a territorial statute somewhat similar to the one here involved was granted by a single district judge on the ground of the invalidity of the territorial statute under the Federal Constitution. The Circuit Court of Appeals for the Ninth Circuit affirmed on the same ground, 11 F. 2d 710, and so did this Court on certiorari.   No question was raised in any court as to the applicability of the requirement of § 266 that no such injunction should be granted against a state without three judges.   If § 266 applied to Hawaii, the interlocutory order of injunction was entered without jurisdiction. The Court of Appeals and this Court were without jurisdiction over the appeal.   While it is sometimes said that action, where the power to act is unquestioned, can hardly be said to be a precedent for a future case,[21] where as here the responsibility was on the courts to see that the three-

---

[20] See also *Talbott* v. *Silver Bow County*, 139 U. S. 438; *Wynne* v. *United States*, 217 U. S. 234, 242; *Yeung* v. *Territory of Hawaii*, 132 F. 2d 374, 377.

[21] *United States* v. *More*, 3 Cranch 159, 172; *Snow* v. *United States*, 118 U. S. 346, 354; *Cross* v. *Burke*, 146 U. S. 82, 87; *Louisville Trust Co.* v. *Knott*, 191 U. S. 225, 236; *Arant* v. *Lane*, 245 U. S. 166, 170.

judge rule was followed, we think it significant that no one sought to apply § 266 to Hawaii.[22]

We hold that Judicial Code § 266 is not applicable to Hawaii, that we are without jurisdiction in case No. 52 and that the appeal therein must be dismissed.

We turn now to No. 474, here on writ of certiorari to the Court of Appeals of the Ninth Circuit before the entry of a decree in that court. 28 U. S. C. § 2101 (d). What we have said concerning the final judgment in the District Court of Hawaii establishes that the judgment was entered by a court improperly constituted under Judicial Code § 266. Nevertheless this order is subject

---

[22] *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10, 13. See also *Benedicto* v. *West India & Panama Telegraph Co.,* 256 F. 417. Compare *Porto Rico Light & Power Co.* v. *Colom,* 106 F. 2d 345, 354–55.

The District Court thought that any question by reason of the *Tokushige* case as to differences between that court and the United States District Courts of the States so far as their powers under § 266 is concerned, had been "expressly and clearly removed by subsequent specific Congressional legislation. Title 48, Section 646, U. S. C. A., Federal Rules of Civil Procedure, rules 1, 65(e), 28 U. S. C. A. following section 723c." 74 F. Supp. at 860.

We do not think that either the section or the rules have any effect upon the applicability of § 266 to the United States District Court in Hawaii. 48 U. S. C. § 646 (now covered by 28 U. S. C. § 2072, see note 26 *infra*) made the rules applicable to Hawaii, but the rules do not affect the question of the applicability of § 266 to Hawaii. Rule 1 states the scope of the rules. Rule 65 (e), insofar as it has any possible bearing, says merely that "These rules do not modify . . . the act of August 24, 1937, c. 754, § 3, relating to actions to enjoin the enforcement of acts of Congress." Section 3 of c. 754, 50 Stat. 751, is the section that provides for a special district court where an injunction is sought to restrain the enforcement, operation or execution of, or to set aside, any act of Congress on the ground that it is repugnant to the Constitution of the United States. In this present proceeding we are not dealing with an act of Congress but with an act of the territorial legislature of the Hawaiian Islands.

to review in the Court of Appeals.[23]  It is the final order of a district court although erroneously heard by three judges instead of one and not appealable directly here because not covered by § 266.  But as a final order of the District Court, it is reviewable in the Court of Appeals,[24] and can be considered here.

Another procedural matter leads us to refuse consideration of case No. 474 on the merits.  Respondents in the United States District Court sought and obtained injunctive relief from the enforcement of a territorial law by a proceeding under 28 U. S. C. § 41 (1) on the plea that the law violates the due process clause of the Fifth Amendment because respondents by the law were deprived of liberty and of property.[25]  The allegations of irreparable injury consist of an assertion that it will be necessary to incur a comparatively large liability for building repairs and employment of teachers on the part of the respondent schools before the Act will be violated, sums that will be lost if the Act can be enforced constitutionally.  The teacher claims to suffer irreparable injury because he cannot follow his occupation.  As the District Court found irreparable injury to all respondents

[23] *Healy* v. *Ratta,* 289 U. S. 701; 292 U. S. 263, 264; 67 F. 2d 554, 556; *Wilentz* v. *Sovereign Camp,* 306 U. S. 573, 582; *Commission* v. *Brashear Lines,* 312 U. S. 621, 626.

[24] 28 U. S. C. § 225 (a), now 28 U. S. C. § 1291.  See *Gully* v. *Interstate Nat. Gas Co.,* 292 U. S. 16, 19; *Oklahoma Gas Co.* v. *Packing Co.,* 292 U. S. 386, 392; *Rorick* v. *Commissioners,* 307 U. S. 208, 213.  Cf. *Jameson & Co.* v. *Morgenthau,* 307 U. S. 171, 174; *Garment Workers* v. *Donnelly Co.,* 304 U. S. 243, 251–252.

[25] As indicated above, note 6, respondents also relied upon a denial of equal rights under 8 U. S. C. §§ 41, 42 and 43.  No more definite allegation appears.  The hearing developed nothing to indicate any purpose or action of discrimination against any race or group in the law or its administration.  The Act covered all foreign languages. We, therefore, confine ourselves to the due process issue.  See *Snowden* v. *Hughes,* 321 U. S. 1.

in the jurisdictional amount, we assume there is both federal and equitable jurisdiction.[26] Furthermore, there is no problem as to whether or not there is an adequate legal remedy in the federal courts.[27] There is none. The sole sanction, see note 5 *supra,* is by the institution of proceedings in equity in territorial courts whereby the extraordinary remedies of prohibitory and mandatory injunctions are utilized to stop violations of the Act. The

---

[26] Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected. Rules 1 and 2; 48 Stat. 1064, §§ 1 and 2; [note 48 U. S. C., 1946 ed., § 646; repealed by Act of June 25, 1948, 62 Stat. 992; cf. 28 U. S. C. § 451] *Abbe* v. *New York, N. H. & H. R. Co.,* 171 F. 2d 387, 388; *Bereslavsky* v. *Caffey,* 161 F. 2d 499; *Bereslavsky* v. *Kloeb,* 162 F. 2d 862; *Byram* v. *Vaughn,* 68 F. Supp. 981, 984. Compare *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 9–10. See *Hillsborough* v. *Cromwell,* 326 U. S. 620, 622.

*Atlas Ins. Co.* v. *Southern, Inc.,* 306 U. S. 563, 568:

"Section 11 of the Judiciary Act of 1789, 1 Stat. 78, provided that the circuit courts should have 'cognizance . . . of all suits of a civil nature at common law or in equity' in cases appropriately brought in those courts. This provision is perpetuated in § 24 (1) of the Judicial Code, 28 U. S. C. § 41 (1), [now §§ 1331 *et seq.*] which declares that the district courts shall have jurisdiction of such suits. The 'jurisdiction' thus conferred on the federal courts to entertain suits in equity is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries. . . . This clause of the statute does not define the jurisdiction of the district courts as federal courts, in the sense of their power or authority to hear and decide, but prescribes the body of doctrine which is to guide their decisions and enable them to determine whether in any given instance a suit of which a district court has jurisdiction as a federal court is an appropriate one for the exercise of the extraordinary powers of a court of equity. . . ."

[27] Cf. *Matthews* v. *Rodgers,* 284 U. S. 521, 525; Moore's Federal Practice, vol. 1, pp. 108, 208; *Grauman* v. *City Company of New York,* 31 F. Supp. 172; H. R. Rep. No. 308, 80th Cong., 1st Sess., p. A 236 on 28 U. S. C. § 384.

respondents here, if such proceedings were brought, would have such defenses as the laws of the territory allow, including of course defenses based upon the present issues of unconstitutionality under the Federal Constitution.

We are of the view, however, that the United States District Court for Hawaii, as a matter of its discretion, should have refused to grant this injunction. The complaint called for broad consideration of the application of the Act to foreign language schools and teachers. It had not been construed by the Hawaiian courts. Judge McLaughlin pointed out in his conclusions of law on a motion for preliminary injunction before the request for a three-judge court that this law

> ". . . carries no criminal penalties for infractions. Enforcement is in equity in the circuit courts of the Territory. Plaintiffs have no reason to fear a court of equity, and there is every reason to believe that their constitutional rights would be fully protected in the equity courts of the Territory and that an appeal, if need be, eventually could be had to the United States Supreme Court."

The statement applies as well to the final injunction. Entirely aside from the question of the propriety of an injunction in any court,[28] territorial like state courts are the natural sources for the interpretation and application of the acts of their legislatures and equally of the propriety of interference by injunction.[29] We think that where equitable interference with state and territorial acts is sought in federal courts, judicial consideration of acts of importance primarily to the people of a state

---

[28] See *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89, 95.

[29] *Waialua Co.* v. *Christian,* 305 U. S. 91, 108; *Beal* v. *Missouri Pacific R. Corp.,* 312 U. S. 45; *Watson* v. *Buck,* 313 U. S. 387; *Douglas* v. *Jeannette,* 319 U. S. 157; *Burford* v. *Sun Oil Co.,* 319 U. S. 315, 333, n. 29; *Meredith* v. *Winter Haven,* 320 U. S. 228, 235. Compare *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101.

or territory should, as a matter of discretion, be left by the federal courts to the courts of the legislating authority unless exceptional circumstances command a different course. We find no such circumstances in this case.

The appeal in No. 52 is dismissed.

The judgment in No. 474 is reversed and the cause remanded to the District Court with directions to dismiss the complaint.

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE RUTLEDGE joins, concurring in part and dissenting in part.

As to No. 52, I join the Court's opinion.

As to No. 474, I would leave the appeal now pending in the Court of Appeals for the Ninth Circuit to its adjudication there and not grant the petition for certiorari. The power which Congress has given to this Court to short-circuit the Courts of Appeals should not be exercised except for some compelling reason of wise judicial administration. No reason is here present that would not be equally available in almost every case which, even though a constitutional issue may be involved, cannot come here directly, but must first go to a Court of Appeals. Congress decided not to provide for such direct appeals here and we should not exercise our discretionary power to grant what Congress has withheld. This discretionary power should come into play only for those exceptional circumstances for which Congress designed it.

After finding that we are without jurisdiction to review directly the decree of the District Court of Hawaii, the Court in effect allows such direct review by not requiring the appeal now pending in the Court of Appeals to run its normal course of adjudication in that court. This is justified on the ground that the case has been fully presented in the District Court and here. But if we

would not have brought here an appeal undecided in the Court of Appeals merely because it had been adjudicated on its merits in the District Court, there is no more reason for doing so when a direct appeal from the District Court has been improvidently sought here. Moreover, the Court is not disposing of the case on its merits. By lifting the case out of the Court of Appeals the Court is assuming the burden of canvassing issues not dealt with below. This entails the study of new questions and the task of opinion writing. These are precisely the burdens from which the Court asked to be saved and from which Congress saved the Court by the Judiciary Act of 1925. If the regular course of proceeding were followed and the matter were to be disposed of by the Court of Appeals, as it is now being disposed of here, the necessity for future consideration here might never arise beyond that involved in finding no reason for granting a petition for certiorari were one to be applied for. Drains on the Court's time through jurisdictional misconceptions should be strongly discouraged. We should follow the honored practice of this Court in dismissing a proceeding that should not be here *ab initio,* even though the Court's time and effort had been expended after full argument in concluding that a case should never have been brought here.[1]

---

[1] Writs of certiorari granted because of an apparent conflict between courts of appeals have been dismissed because the existence of such conflict did not survive argument. And for these reasons: "If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal. The present case certainly comes under neither head." *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387, 393.

If the attempt had been made to bring No. 474 here prematurely it would surely have failed. It should not succeed because No. 52 was improperly brought here. Accordingly I agree with the Court in dismissing No. 52 for want of jurisdiction, and in No. 474 I would deny the petition for certiorari.