THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALEJA ROMERO WIDOW OF ORTIZ, Defendant and Appellant.

No. 14226. Argued January 10, 1950.—Decided March 21, 1950.

*F. Fernández Cuyar* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, ·Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On January 17, 1950 we affirmed the judgment of the district court sentencing the defendant to six months in jail on a charge of violation of § 4 of Act No. 220, Laws of Puerto Rico, 1948, known as the *Bolita* Act. The defendant has appealed to the Court of Appeals for the First Circuit and has filed a motion for bond pending appeal pursuant to Rule 46 (*a*) (2) of the Federal Rules of Criminal Procedure. This Rule provides that bail may be allowed pending appeal "only if it appears that the case involves a substantial question which should be determined by the appellate court."

 As we understand her motion, the appellant's principal contention on appeal is that § 4 is so vague and indefinite that it violates the due process clause of the Organic Act. This contention was made for the first time by the appellant in her "Motion for Reconsideration and Annulment of Judgment", filed in this Court on January 26, 1950. In *People* v. *Mantilla, ante,* p. 35, we carefully considered and rejected that contention. But under the peculiar circumstances of this case, the fact that the appellant raises a constitutional question does not necessarily mean that there is ·a substantial question to be determined on appeal.

We concede that the meaning of § 4 represented a substantial question *for this Court.* But that is a local question, which has now been settled. Consequently, our views on that question may not be disturbed by the Court of Appeals unless they are inescapably wrong. *De Castro* v. *Board of Comm'rs.,* 322 U.S. 451. And to grant bond we would have to find affirmatively that a substantial question exists that we̶ are inescapably wrong as to the meaning of § 4, a local statute. Undoubtedly, that question can be better answered by the Court of Appeals. But Rule 46 (*a*) (2) requires us to face it, at least in the first instance. In carrying out that

mandate, we are not prepared to say that such a substantial question exists.

■ We think the cases in which the Supreme Court of the United States passes on the constitutionality of state statutes are helpful here. In those cases the Supreme Court has always been careful to point out that what a state statute means does not involve a constitutional question. It is only after the meaning of the statute is definitely settled by the state court, that the constitutional question emerges. Indeed, under appropriate circumstances the Supreme Court has refused to pass on constitutional questions involving state statutes until their meaning has been fixed by the state courts. *A.F. of L.* v. *Watson,* 327 U.S. 582, 595–99; *Federation of Labor* v. *McAdory,* 325 U.S. 450; *Meredith* v. *Winter Haven,* 320 U.S. 228, 236; *Watson* v. *Buck,* 313 U.S. 387, 401–03; *Railroad Comm'n.* v. *Pullman,* 312 U.S. 496; *In re President and Fellows of Harvard College,* 149 F. (2) 69, 72 (C.A. 1, 1945). The Supreme Court has followed the same rule for territorial statutes. *Stainback* v. *Mo. Hock Ke. Lok Po.,* 336 U.S. 368, 383–84. By the same token, when passing on their constitutionality, the Supreme Court accepts the interpretation of state courts of its statutes as authoritative. "The interpretation by the [state] Court of Appeals puts these words in the statute as definitely as if it had been so amended by the legislature. *Herbert* v. *Louisiana,* 272 U.S. 312, 317; *Skiriotes* v. *Florida,* 313 U.S. 69, 79." *Winters* v. *New York,* 333 U. S. 507, 514; *Kovacs* v. *Cooper,* 336 U.S. 77, 84–85; *Terminiello* v. *Chicago,* 337 U. S. 1, 4; *Cole* v. *Arkansas,* 338 U.S. 345; *Fox* v. *Washington,* 236 U.S. 273.[1]

---

[1] The Supreme Court said in *Gryger* v. *Burke,* 334 U.S. 728, 731: "We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."

██ It may perhaps be argued that these last cases holding that the Supreme Court accepts the state interpretation as authoritative are not strictly in point as the courts above us are not bound to accept our construction of insular statutes. But our views as to the meaning of local legislation are controlling, unless they are inescapably wrong. And experience in recent years has shown that the possibility that the Court of Appeals will reject our interpretation of a local Act is exceedingly remote. It is precisely because the views of the territorial courts are normally considered authoritative that the Supreme Court, as we have seen in the *Stainback* case, postpones decisions on the constitutionality of territorial, as well as state statutes, until the territorial courts fix their meaning. We therefore think that the cases in question furnish an analogy in support of our view that it is highly probable that the Court of Appeals will accept our interpretation of § 4 as authoritative, and then proceed to determine if § 4, as thus construed, violates the due process clause of the Organic Act.

If we are right in the view expressed in the foregoing paragraph and the Court of Appeals finds that it must accept our construction of § 4 because it cannot say that it is inescapably wrong, no substantial question—indeed, no question at all—as to constitutionality remains in the case. As we pointed out in *People* v. *Mantilla, supra,* (p. 46) ". . . once we have concluded that § 4 requires a showing that the materials involved were connected with a *bolita* game, the constitutional problem vanishes. The defendant does not contend that the statute as thus construed violates due process. She argues only that it cannot be so read; that it must be read as she construes it; and that as thus interpreted it is unconstitutionally vague. But since we disagree with her as to the meaning of § 4, the constitutional question drops out of the case." See *Herbert* v. *Louisiana, supra,* p. 317.

We are aware of a somewhat subtle argument that might be made in support of the theory that the determination of

the meaning of § 4 is not a local question. Indeed, this very argument was made in *People* v. *Mantilla, supra.* Briefly, this contention is that § 4 is so plain and unambiguous that it leaves no room for construction and for us to interpret it as we have done constitutes "judicial legislation" and a violation of the doctrine of the separation of powers.

We think that argument proves too much. If it were valid, it would apply to virtually every case in which we construe local legislation and would destroy the "inescapably wrong" doctrine. Under this doctrine it is primarily ·for this Court to determine the meaning of insular statutes. But that rule would be meaningless if an appellant could persuade the Court of Appeals to exercise its independent judgment in construing such Acts merely by arguing that we have invaded the prerogatives of the Legislature. On final analysis, in every case in which a party disagrees with us as to the meaning of local legislation, he thinks we are legislating. See *Compañía Popular* v. *Unión de Empleados,* 69 P.R.R. 167, 177, footnote 2. Is he thereby entitled to ·the independent judgment of the Court of Appeals on his contention? We do not think that was the rule the Supreme Court intended to lay down in *De Castro* v. *Board of Comm'rs., supra.* Rather we think it meant to give this Court a free hand in settling the meaning of local statutes, provided only that our views were not inescapably wrong. And as already noted experience has shown that the courts above us will rarely conclude that a decision by us on a local question is inescapably wrong.

Another way of stating this point is that the arguments that we have violated the doctrine of separation of powers and that our conclusion as to the meaning of § 4 is inescapably wrong tend to merge. That is to say, if our construction of § 4 is wholly arbitrary and capricious, then it is not only inescapably wrong but we have also thwarted the will of the Legislature and thereby violated the doctrine of the separation of powers. By the same token, if the Court of Ap-

peals comes to the conclusion that our reading of § 4 is not inescapably wrong, the doctrine of separation of powers never comes into play: the meaning of § 4 is fixed by the language of the statute as construed by us. We are therefore unable to see how the doctrine of the separation of powers has any effect on the problem of whether there is a substantial question as to whether the Court of Appeals will reverse our interpretation of § 4. *Cf. Buscaglia* v. *District Court of San Juan*, 145 F.(2) 274, 283–84 (C. A. 1st, 1944), cert. denied, 323 U.S. 793.

■■ We think it also appropriate to note that Rule 46(a)(2) does not make the granting of bond mandatory. It provides that bond "may" be granted if a substantial question exists to be determined upon appeal. We believe the Rule vests us with discretion to deny bond because the defendant is a dangerous character. And here, while the defendant perhaps is not a dangerous character in the physical sense, she is a menace to the community because of her illicit activities. See *People* v. *Mantilla, supra*. We are not prepared to say that she will not continue these activities if she is released on bond pending appeal. Moreover, our records show a number of pending cases which may require the same treatment if we affirm the judgment of conviction therein. As we indicated in the *Mantilla* case, at long last effective steps are being taken under Act No. 220 to eradicate the serious evils which have followed in the wake of the playing of *bolita* in Puerto Rico. Service of sentences has already been delayed to a considerable extent while this and other cases ran the gamut of our courts. If we now grant bond in such cases, effective enforcement of Act No. 220 will be seriously impaired while the cases are pending in the Court of Appeals. We think under the circumstances that whatever discretion we have in the premises should be exercised against the defendant.

We are aware of the fact that under Rule 46(a)(2) the Court of Appeals or any of its Judges may grant bond in this

case without reference to our action on this motion. But that does not relieve us of the obligation of passing on the motion in the first instance. And in so doing, we think the Court of Appeals is entitled to our views in detail, particularly as "considerations relevant for decision must be drawn from an environment unfamiliar to and far removed from that in which the reviewing court sits." *De Castro* v. *Board of Comm'rs.*, *supra*, p. 457. Since we are of the view that the defendant does not come within Rule 46(a)(2), it is our duty to deny bond. See Yankwich, Release on Bond by Trial and Appellate Courts, 7 F.R.D. 271, 276 *et seq.*; Holtzoff, Defects in the Administration of Criminal Justice, 9 F.R.D. 303, 305.

The motion for bond pending appeal will be denied.

Mr. Justice Negrón Fernández did not participate herein.

---

MR. JUSTICE TODD, JR., dissenting.

My dissent in the case of *People* v. *Mantilla*, *ante*, p. 35, compels me to dissent in the decision of this case as to the motion for bond on appeal.

I believe that there is a substantial question involved in the appeal herein and that it is not within the province of this Court to state, *a priori*, that said question does not exist because we are not inescapably wrong in our decisions. I think this is a presumptuous attitude. If it were to prevail, then bond on appeal would never be allowed in cases decided by this Court for the simple reason that we would never consider that our decision is inescapably wrong.

But this is not the approach which should be taken to this question. In granting bond we would not have "to find affirmatively that a substantial question exists that we are inescapably wrong. . ." Our decision *might be* found inescapably wrong, but that is for the Court of Appeals to decide and not for us. It seems to me presumptuous for us to state, ourselves, that our decision in the present case is not inescapably wrong, that the possibility that the Court of Appeals will

reject our interpretation of the statute "is exceedingly remote," and that "it is highly probable" that said Court "will accept our interpretation of sec. 4 as authoritative. . ."

Although in *People* v. *Mantilla, supra,* this Court rejected appellant's contention (accepted by me as correct in my dissenting opinion) to the effect that the interpretation given § 4 of the *Bolita* Act is a flagrant example of unauthorized judicial legislation, it can not be logically maintained that this argument "If it were valid, it would apply to virtually every case in which we construe local legislation and would destroy the 'inescapably wrong' doctrine." Indeed, it is this argument that proves too much. If I understand it, it means that whenever we construe a local statute we may vary its express language, include phrases that have been omitted by the Legislature, change one word for another, in fact, change the statute to suit ourselves and no substantial question would exist in any of such cases because since this Court would state that it is not "inescapably wrong" in construing the statute, then the bond on appeal would never lie. If this is not the result of this statement, in what case involving construction of a local statute would the granting of bond lie?

In my opinion, the present case involves a substantial question which must be decided by the Court of Appeals and under Rule 46 (*a*) (2) of the Federal Rules of Criminal Procedure the bond on appeal should be allowed.