*225 ORDER (Granting Motion to Dismiss)
MARK BUTTERFIELD, Chief Judge.
PROCEDURAL HISTORY
On May 9, 1997, plaintiff filed this lawsuit against a class of defendants composed of fifty-nine tribal members alleging two causes of action: solicitation to commit a felony and conversion of tribal property. JoAnn Jones through her attorneys Frank Tuerkheimer, James Friedman and Melanie Cohen filed a response on June 2, 1997. Several defendants filed responses individually, including Eugene Topping (05/16/97), William Hall (05/23/97), Pamela Kingswan (05/23/97), Tracy Thundercloud (05/28/97). The remaining defendants, who agreed to a group defense represented by Jeff Scott Olson and became known as the “Blue Wing defendants,” filed a response on May 29, 1997. Forrest Blackdeer, Chuck Smith, and Carlos Funmaker decided to represent themselves in the matter, with Mr. Smith filing a response on June 2, 1997, and Mr. Blackdeer and Mr. Funmaker on September 17, 1997. Defendant John Climer filed a response on June 4, 1997.
On May 29, 1997, defendant JoAnn Jones filed a Motion-to Dismiss the claims against her. On August 27, in response, to *226 Motions to Stay Discovery filed by Jeff Scott Olson and Frank Tuerkheimer, the Court issued an Order Granting Stay of Discovery. On September 10, 1997 the Court convened a Scheduling Hearing to address deadlines for further Motions and briefs as well as set a date for oral arguments. At this Hearing, as a result of unsuccessful service to numerous defendants, the plaintiff agreed to dismiss those not provided notice from the suit, including Jerome Cloud, Hilton Vasquez, John S. Cloud, Roger Snake, J.W. Holst, and Lionel Cloud. Also on September 10, 1997 the Court approved an optional group defense for those without counsel to fall under Jeff Scott Olson’s representation and sent notice to all defendants informing of their options. On October 3, 1997, the “Blue Wing defendants,” a majority of the remaining class members, also filed a Motion to Dismiss. The Trial Court convened a Hearing on November 12, 1997 to hear oral arguments and consider the defendants’ Motions to Dismiss. Appearances were as follows: Mark Goodman for the plaintiff Steven Funmaker, James Friedman and Melanie Cohen on behalf of defendant JoAnn Jones, and Jeff Scott Olson on behalf of the “Blue Wing defendants,” with Chief Judge Butterfield presiding, assisted by Clerk of Court Marcella Cloud.
APPLICABLE LAW
Ho-Chunk Nation Constitution, Art. I— Territory and Jurisdiction
Section 1. Territory. The territory of the Ho-Chunk Nation shall include all lands held by the Nation or the People, or by the United States for the benefit of the Nation or the People, and any additional lands acquired by the Nation or by the United States for the benefit of the Nation or the people, including but not limited to air, water, surface, subsurface, natural resources and any interest therein, notwithstanding the issuance of any patent or right-of-way in fee or otherwise, by the governments of the United States or the Ho-Chunk Nation, existing or in the future.
Section 2. Jurisdiction. The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein, based upon the inherent sovereign authority of the Nation and the People or upon Federal law.
Ho-Chunk Nation Constitution, Art. V—Legislature
Section 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(x) To enact any other laws, ordinances, resolutions, and statutes necessary to exercise its legislative powers delegated by the General Council pursuant to Article 111 including but not limited to the foregoing list of powers.
Section 3. Codes. The Legislature shall adopt Codes governing Membership, Open Meetings, Elections, Ethics including conflicts of interest, nepotism, and the conduct of all elected and appointed officials and employees, and other Codes as deemed necessary.
Ho-Chunk Nation Constitution, Art. VII— Judiciary
Section 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Section 5. Jurisdiction of the Judiciary.
*227 (a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Section 6. Powers of the Tribal Court
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
(b) The Trial Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
Ho-Chunk Nation Judiciary Act of 1995
Section 2. Jurisdiction. The Ho-Chunk Judiciary shall exercise jurisdiction over all matters within the power and authority of the Ho-Chunk Nation including controversies arising out of the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation. This jurisdiction extends over the Nation and its territory, persons who enter its territory, its members, and persons who interact with the Nation or its members wherever found.
Section 3. Rules and Procedure. Proceedings of the Judiciary shall be conducted in a public place suitable for the purpose, but not necessarily in Ho-Chunk territory. Decisions of the Judiciary shall be in writing and shall be submitted to the parties. The Judiciary shall keep a complete and permanent record of all proceedings and decisions. Absent protective orders granted for good cause or Legislative enactments to the contrary, these records shall be open to the public.
The Judiciary shall have exclusive authority and responsibility to employ personnel and to establish written rules and procedures governing the use and operation of the courts.
All matters shall be tried in accordance with the Ho-Chunk Rules of Procedure and the Ho-Chunk Rules of Evidence which shall be written by the Supreme Court, published, and available to the Public.
FINDINGS OF FACT
1. Plaintiff is an enrolled adult member of the Ho-Chunk Nation.
2. Although plaintiff alleges that all defendants are enrolled adult members of the Ho-Chunk Nation, and thus subject to the jurisdiction of this Court, the Nation has no record of a Dana A. Houghton, William M. Hall, or a Foster D. Decorah.
3. It is unclear who plaintiff intends to include in other instances. Although there are no Rose M. Decorahs, there is a Rosalie Jayne Decorah and a Rosella Dee Deco-rah. There are two Gerald Clouds, the younger living in Odanah and the older in Wittenberg. Finally, there are two Joseph E. (Eli) Decorahs, both living at the same address in New Lisbon.
4. At least one named defendant, Gerald Cloud, "was a minor at the time the underlying events occurred thus making him an inappropriate party to this suit.
5. Jo Ann Jones was elected Chairperson of the Wisconsin Winnebago Business *228 Committee [hereinafter WWBC] in June 1991 to a four-year term.
6. JoAnn Jones’ legitimate status as tribal Chairperson of the WWBC has been recognized by two state courts, Gudgeon v. Jones, No. 93-1479-FT,180 Wis.2d 472, 514 N.W.2d 55 (Wis.Ct.App.1993) and Rosen v. Jones, et al., No. 92-CV-293 (Sauk Cty. Cir. Ct., June 4, 1993), and one federal court, United States v. Funmaker, 10 F.3d 1327 (7th Cir.1993).
7. Alvin Cloud and James Greendeer were also elected to positions on the WWBC for Area II and IV respectively in the June 1991 election. They were prevented from taking their seats for several months due to opposition by the Six Pack faction. The Six Pack faction instead seated Stuart Taylor and Ermin Dick until the matter was ultimately resolved in favor of Mr. Cloud and Mr. Greendeer.
8. On January 26, 1992, JoAnn Jones and her supporters gathered at the Ho-Chunk Bingo and Casino Hall in Baraboo, Wisconsin to regain control of the facility as a result of concerns over the mismanagement and seizure of tribal assets by the Jenna Corporation, headed by Glen Corrie.[1]
9. Plaintiff alleges that between January 26, 1992 and January 29, 1992 when they occupied the building defendant Jones and her supporters converted over $106,000 in cash properly owned by the Wisconsin Winnebago Tribe, now the Ho-Chunk Nation. Plaintiff claims that this cash has never been accounted for in a proper manner.
10. Plaintiff further alleges that Jones and her supporters broke into the tribal smokeshop and carried away an unknown number of cartons and packages of cigarettes.
11. Plaintiff asserts that Jones and her supporters ransacked the bingo hall’s adjacent concession store, carrying away food, beverages, and merchandise owned by the Wisconsin Winnebago Tribe.
12. Plaintiff claims that on January 29, 1992 Jones and her supporters convened a meeting at which time a vote was taken to burn down the building rather than surrender the assets into the hands of an opposing political faction, the Six Pack, also headed by Glen Corrie.
13. Between noon and 1:00 p.m., plaintiff set fire to the Ho-Chunk Casino and Bingo Hall.
14. The damage to the burned bingo hall amounted to more than $15,500.
15. On October 15, 1992, plaintiff was convicted of two felonies in the U.S. District Court for the Western District of Wisconsin: attempting to destroy by fire a building involved in interstate commerce pursuant to 18 U.S.C. § 844(i) and using a destructive device in relation to a crime of violence pursuant to 18 U.S.C. § 924(e).
16. Plaintiff was sentenced on December 18, 1992 to 33 months imprisonment for the violation of 18 U.S.C. § 844(i) and one day consecutive imprisonment for the violation of 18 U.S.C. § 924(e).
17. Plaintiff was incarcerated in a federal correctional institution from January 16, 1993 to June 1995 and then furloughed until September 1995 as a result of his wife’s medical condition. Plaintiff went back into federal prison from September 1995 until his release in July 11, 1996.
18. No other individuals were prosecuted or convicted for any criminal action or inaction surrounding the events which transpired.
*229 19. Plaintiff filed suit on May 9, 1997 in the HCN Trial Court against the named defendants for two causes of action: solicitation to commit a felony and conversion.
DECISION
I. APPROPRIATE STANDARD FOR MOTION TO DISMISS
This Court entertains Motions to Dismiss by accepting all well pleaded factual allegations as true and drawing all reasonable inferences in favor of the non-movant, in this case the plaintiff. Sheila WhiteEagle v. Ho-Chunk Nation, CV 96-30 (HCN Tr. Ct., Jan. 27, 1997); Susan Rowlee v. Majestic Pine Casino, PRC 95-011 (HCN Tr. Ct., April 10, 1996); Pierre Decorah v. Rainbow Casino, CV 95-018 (HCN Tr. Ct., March 15, 1996). Moreover, the Court is permitted to “look beyond the jurisdictional allegations to the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.” Pierre Decorah v. Rainbow Casino, CV 95-018 (HCN Tr. Ct., March 15, 1996), quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir.1993), citing with approval, Graf on Coip. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979). Even under the liberal analytical standard in which this Court examines the matter in the light most favorable to the plaintiff, the Ho-Chunk Nation Trial Court refuses to proceed in this case and grants the defendants’ respective Motions to Dismiss.
II. PLAINTIFF’S CLAIM OF SOLICITATION TO COMMIT A FELONY IS DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED
Plaintiff asserts in his pleadings that “[b]y their words and by their vote, Jones and her supporters actively solicited the plaintiff to commit such Federal felony, and Jones and her supporters did so under circumstances unequivocally indicating that they intended such felony be committed.” Complaint, #88, pp. 11-12. However, counsel for plaintiff admitted on the record at the Hearing held on November 12, 1997 that the Complaint does not state that Mr. Funmaker was specifically directed to burn down the bingo hall. Transcript, p. 43, In 9-p. 45, In 13. In fact, counsel admitted, “He took it upon himself, I guess, Judge.” Transcript, p. 59, In 14-15.
While the elements of solicitation to commit a felony were never articulated or established by the plaintiff, even upon the prodding of the Court, the Model Penal Code could offer some insight:
A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.
MPC § 5.02. At a minimum, therefore, the crime of solicitation must exhibit three elements: 1) that the urged behavior constitutes criminal activity, 2) that the person or persons intended to entice another to commit the crime, and 3) that the enticement takes some tangible and reasonably discoverable form which is communicated to the offender. Similar to the crime of conspiracy and other inchoate offenses, solicitation does not require that the underlying crime actually be committed. Without the third element of communication— even broadly construed to encompass verbal and nonverbal representations—one *230 has little more than two otherwise unconnected parties considering the commission of the same criminal offense.
Although it is claimed that the class of defendants urged the plaintiff to burn down the bingo hall by their words and deeds, it is not alleged on the face of the pleadings taken in the light most favorable to the plaintiff that the last two elements of solicitation have been met. No claim has been made that the defendants, either collectively or individually, specifically urged the plaintiff Steven Funmaker to commit arson. Rather, under the available facts it seems that plaintiff took it upon himself to commit the named crimes. As other courts in the past, this Court soundly rejects any argument that as a member of the Bear Clan the duty to take action and enforce the wishes of the people at the bingo hall fell traditionally at the feet of plaintiff, noting that at least four of the named defendants—including JoAnn Jones herself—are also Bear Clan members who did not feel similarly compelled.
Furthermore, even if the plaintiff could satisfy the three elements, solicitation remains a criminal offense, not a civil cause of action. Effectively, the plaintiff seeks relief in a manner similar to contribution in civil tort cases, but attempts to create an accommodation in the law which simply does not exist. The plaintiff would have this Court recognize a private cause of action for the violation of the underlying federal criminal law, 18 U.S.C. § 844(i), under which plaintiff was originally convicted. As defendants duly point out, the plaintiff cannot cite to one case or statute in any jurisdiction which provides for such a cause of action. Moreover, defendants affirmatively cite to numerous sources of authority which expressly refuse to recognize a private cause of action under this section of federal law. See, Stafford v. Luongo, 1989 WL 45910, 1989
U.S. Dist. LEXIS 4733, 4734 (E.D.Pa.1989) (“Title 18 is a federal criminal statute which does not create civil liability or a private right of action.... ”); Hull v. Central TranspoH, Inc., 628 F.Supp. 784, 792 (N.D.Ind.1986) (“Nothing in the statute provides for a private civil action to enforce the statute; indeed, given the fact that the legislature has opted to make violation of the statute a criminal offense, one can imply that it does not intend to create any private cause of action.... ”). Although it is not clear on the record or the underlying reported decisions surrounding this case that the plaintiff asserted a conspiracy defense or urged the prosecution of others he felt should be held accountable, it is reasonable to state that they could have been. Moreover, in the Seventh Circuit decision of U.S. v. Fun-maker, the first sentence reads: “Defendant Steven Bern Funmaker set fire to the Ho Chunk Bingo Hall and Casino at the direction of tribal leaders.” 10 F.3d 1327, 1329 (7th Cir.1993). For whatever reasons which are ultimately irrelevant in the present action, the federal government chose not to prosecute any others for the crimes committed.
Most importantly, the injury is not traceable to the defendants’ action or inaction because the plaintiffs harm—33 months in prison—arose as a result of his own criminal conviction for arson. The public policy concerns which would arise if such a eause of action were to be recognized are not lost on this Court. While the spheres of criminal and civil law occasionally overlap or run together in given areas, (e.g. murder and wrongful death) it would amount to a grave error to permit a criminal to recover for his or her wrongdoing by implicating others in a subsequent civil action. Just as federal courts soundly reject the so-called ‘Nuremberg’ or ‘folio-wing orders’ defense, this Court refuses to *231 adopt a civil cause of action which might detract from any deterrent or punitive effect the criminal justice system might impose on an individual. See, Id. at 1331; United States v. North, 910 F.2d 843, 927 (D.C.Cir.1990) (C.J. Wald, concurring in part and dissenting in part) (“In short, North’s proposed authorization defense strips away all of the restraints that prevent the reliance on an official misstatement excuse from turning into a mere following orders defense.”). To argue otherwise is simply irresponsible.
III. PLAINTIFF’S CLAIM OF CONVERSION IS DISMISSED FOR LACK OF STANDING
A. Elements of Standing
The Ho-Chunk Nation Supreme Court in its decision of Loa Porter v. Chloris Lowe, Jr., SU 96-05 (HCN S.Ct., Jan. 10, 1997) held that the plaintiff there lacked standing to bring the action and that the Legislature represented the proper party to review the action of the Executive branch. “[I]t is unfathomable to believe that the intention of the cases and controversies clause was to allow in each and every action that is brought to the lower court.... After a case and controversy has arisen through the proper channels, then the Judiciary has the ability to address the matter. Not before.” Id. at 5-6. The inquiry in the matter before this Court is whether or not the plaintiff has presented a justiciable claim.
While a justiciable matter is one that is appropriate for judicial consideration or review which involves a case or controversy where a present and fixed claim of right is asserted, standing represents an aspect of justiciability which concerns whether or not a party enjoys a large enough stake in the litigation to obtain a judicial resolution. In order to establish standing, this Court has held that a plaintiff must show he or she has “personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,” that the injury “fairly can be traced to the challenged action,” and the injury “is likely to be redressed by a favorable decision.” Loa, Porter v. Chloris Lowe, Jr., CV 95-23, p. 2 (HCN Tr. Ct., Oct. 2, 1996), rev’d on other grounds, Loa Porter v. Chloris Lowe, Jr., SU 96-05 (HCN S.Ct, Jan. 10, 1997). See also, U.S. ex rel. Hall, et al, v. Tribal Development Corp., 49 F.3d 1208, 1211 (7th Cir.1995), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). In support of the first element of standing, personal injury, HCN R. of Civ. P. 23 requires that “[e]very action shall be brought in the name of the real party in interest.” Apart from technical pleading standards which the Nation has all but rejected, the satisfaction of these elements ensures the Court that, at a minimum, the party bringing the suit has actually been harmed in such a way that a judicial remedy may be recognized.[2]
B. Nature of Conversion Claim
In his claim of conversion the plaintiff attempts to cloak himself in the robes of a private attorney-general by bringing a noble action to vindicate a wronged Ho-Chunk Nation. The problem with this argument, of course, rests on the notion that plaintiff does not represent the real party in interest, nor is he clearly suing on behalf of the Nation. The Nation, as the *232 wronged party allegedly bilked of over $100,000, would be the appropriate party to bring this type of action against the class of defendants. Such a suit would spring from either the Legislature or the Executive through the Department of Justice. Although the plaintiff finds it interesting that defendant Jones “tacitly admits the conversion cause of action does state a claim against her,” plaintiff fails to address specifically how he might assert standing to bring it. Plaintiffs Response Brief at 9.
The general rale was established in the landmark case of Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), which held that a taxpayer who brought suit challenging the constitutionality of the Maternity Act of 1921 lacked standing. The statute, which provided federal funding for the improvement of maternal and infant health, was alleged to result in a tax burden the plaintiff characterized as the deprivation of property without due process. The U.S. Supreme Court found that any effect on plaintiffs tax burden was “remote, fluctuating, and uncertain.” Id. at 487, 43 S.Ct. 597. The Court further held:
The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.... Here the parties plaintiff have no such case.
Id. at 488, 43 S.Ct. 597.
In the present case, plaintiff admits that he enjoys no personal stake in the disputed funds as they remain tribal in nature. See, Complaint ¶¶66, 68, 69, 71, 72, 73. Furthermore, plaintiff cannot claim any real difference from any other Ho-Chunk citizen to establish a unique, particularized, and concrete harm against tribal property sufficient to secure standing. Transcript, p. 53, In. 25-p. 54, In. 3. Finally, plaintiff has not articulated how money damages paid to the Nation would redress his injury, either of incarceration or the inability to enjoy tribal funds. As a conversion claim, if any, were to be filed by the HCN Legislature or Executive, the damages in the form of allegedly converted funds would revert to the Nation’s coffers. The U.S. Supreme Court addressed this particular issue in the ease of ASARCO, Inc. v. Radish:
The allegations of economic harm rest on the same hypothetical assumptions as do the taxpayer claims ... These policy decisions might be made in different ways by the government officials, depending upon their perceptions of wise state fiscal policy and myriad other circumstances ... Whether the association’s claims of economic injury would be redressed by a favorable decision depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.
490 U.S. 605, 614-15, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). It remains undisputed that plaintiff cannot point to an interest sufficient to demonstrate a concrete and particularized injury to himself, distinguishable from all other tribal members, which would independently impart standing.
In the case of U.S. ex rel. Hall, et al. v. Tribal Development Corp., 49 F.3d 1208 (7th Cir.1995), the plaintiffs attempted to bring suit as private citizens on behalf of the United States pursuant to the *233 qui tam provisions[3] of section 81 of the Indian Gaming Regulatory Act[4] to void the lease contracts between the defendants and the Menominee Tribe. Such suits generally must be authorized in express statutory language. Id. at 1212-13. In the present case, however, the plaintiff cannot cite to any explicit or even implicit tribal, state, or federal statutory or judicial authority which would vest him with standing sufficient to bring these actions on behalf of the Ho-Chunk Nation. Plaintiff attempts to garner support for his position from the decision of Japan Whaling Assn. v. American Cetacean Soc., 478 U.S. 221, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986), in which it was held that a group of private citizens enjoyed standing when their whale watching activities were being deprived by unchecked Japanese whale harvesting. The case remains distinguishable, however, in that the plaintiffs had specific legislative authority under the Administrative Procedure Act, 5 U.S.C. § 706, to bring the cause of action. Absent clear jurisdictional authority which would permit such an action, the plaintiff may not pursue this matter on good intentions alone.
C. Political Implications
While the motivations of others for not pursuing other parties for these events are beyond the scope of this inquiry, it is interesting to note that no criminal action against the defendants was ever initiated by the state of Wisconsin or the federal government. If the plaintiff argues that the defendants should be held accountable for the allegedly missing money, that same reasoning should hold him accountable for the damage done to the burned bingo hall—a bill of over $15,500. While unfortunate, plaintiffs time served in prison would not necessarily exempt him from paying for the damage as restitution if the Nation were to pursue recovery. It is in this context that it could be said the plaintiff does not fully appreciate the consequences of the present action.
At the Hearing on this matter, the plaintiff and defendants were asked if the Ho-Chunk Nation had ever acted to vindicate its interests in the bingo hall fire or related actions. Both stated that they could not recall such action. This Court is aware, however, that the Nation did seek redress over excesses of the Glen Corrie-Six Pack faction by suit against Come personally and his alter ego, the Jenna Corporation.[5] The Nation was ultimately awarded the major assets of the Jenna Corporation in bankruptcy court. Plaintiff fails to recognize that any inaction on the part of the Ho-Chunk Nation in pursuing Jones, the other defendants, or himself actually amounts to an action—even an action of clemency.
"While the alleged conversion claim indeed may be legitimate—assuming it is not time barred—the plaintiff does not represent the correct party to institute such an action. Moreover, the further pursuit of this case by the Nation might not be in the plaintiffs anticipated best interests. Even broader, as the true focus of an inquiry to ensure accountability would not involve *234 past political alignment, but rather pure civil or criminal culpability, in the interest of fairness Jones and her supporters, the Six Pack and its supporters, and any other then-existing political factions could face potential liability. It remains disingenuous for the plaintiff to characterize the underlying events as solely the product of Jones and her supporters when actual liability, if any, should be painted in broad strokes.
IV. PLAINTIFF’S CLAIM OF CONVERSION IS TIME BARRED BY THE DOCTRINE OF LACH-ES
Defendants also argue that the plaintiffs claim of conversion should be dismissed as it has not been brought in a timely fashion. Black’s Law Dictionary defines the doctrine of laches as the neglect of a party “to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as bar in court of equity.” Such other circumstances include the destruction or misplacement of evidence, the fading of memories, and the unavailability of witnesses. The Court accepts the three elements of laches as presented by the defendants and recognized by the plaintiff: 1) unreasonable delay, 2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and 3) prejudice to the party asserting the defense in the event the action is maintained. Andersen v. Kojo, 110 Wis.2d 22, 27, 327 N.W.2d 195 (Ct.App.1982). The overriding policy concern involves the potential harm done to adverse parties—here the defendants— who must face a claim which may be characterized as stale and difficult to refute.
As to the first element of unreasonable delay, almost six years have passed since the underlying events -transpired. Plaintiff relies on the fact that he was imprisoned for 33 months in the time between now and then to effectively toll his right to bring these causes of action. Defendants correctly note that Wis. Stats. § 893.16(1), which tolls relevant statute of limitations for person under disabilities including imprisonment, does not benefit the plaintiff in the present case because the condition of incarceration did not exist when the cause of actions accrued. Statute of limitations were created to address such concerns of timeliness, and, in their absence, the common law doctrine of lach-es serves as an equitable tool to protect parties from defending against claims which they reasonably may not expect to be resurrected. It is not enough for the plaintiff to point simply at an absence of limitations which would preclude these actions. All parties admit and the Court recognizes that the HCN Legislature has not adopted any statute of limitations to guide this inquiry; moreover, the Trial Court cannot create an affirmative statute of limitations for this or any other cause of action out of thin air as HCN Constitution Art. V expressly reserves such duties to the Legislature. Thus, the Court is left to draw from other jurisdictions or in the alternative equity to fashion a sensible result under the circumstances. Just as the plaintiff had hoped to create a private cause of action pursuant to 18 U.S.C. § 844(i), the plaintiff points to various lengthy statute of limitations from which to bootstrap the underlying claims. Under similar reasoning for refusing to recognize a new civil cause of action for solicitation to commit a felony, this Court finds the plaintiffs arguments unpersuasive. In the absence of applicable law and in light of analogous provisions of state and federal law, under these facts, the Court finds that simply too much time has passed.
*235 The second element of laches, which requires a lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, is satisfied under the presented facts. Plaintiff again hopes to bootstrap his claims when he argues that defendant Jones had knowledge of the underlying facts and events. Jones’ knowledge of the underlying facts and events, however, fails to meet the requirement that Jones had knowledge that Fun-maker would assert the right on which he bases his suit. How can it be argued that Jones should anticipate an action filed by Funmaker based on the past events? Plaintiff misses the mark when he seeks to impute Jones’ general knowledge into the specific knowledge which serves as the very core of the doctrine of laches. Furthermore, assertions concerning Jones’ lack of truthfulness and evasiveness during ensuing investigations prove equally irrelevant as they do not address the requisite relevant knowledge and only serve to inflame the proceedings.
Aside from the substantive bars which preclude suit in this matter, the Court points out that the defendants in this case would endure extreme prejudice if this case were to continue as almost six years have passed since the underlying events transpired. Undoubtedly, countless files and documentation have been destroyed all but erasing any discoverable trail which might have existed. With the fundamental changes in governance and the turnovers in administration which have occurred over the past five years as a result of the Nation’s political turmoil, any misplacement or destruction is to be expected and understood. Thus, the nonexistence of documentary evidence might be explained quite innocently. Furthermore, memories have faded and witnesses have become unavailable. In point of fact, a number of original defendants were nonchalantly dropped from the suit when the initial service of process failed to reach them. While the reason why the plaintiff expressed no desire to pursue all named parties is unknown, it is at least indicative of his awareness that certain parties could not be found as a result of the passage of time. To permit this action to move forward would unfairly (but conveniently) shift the burden of proof and production to the defendants when it rests properly on the plaintiff.
Therefore, in the absence of an applicable statute of limitations on point, the Court incorporates the doctrine of laches to hold that the plaintiffs claim of conversion is time barred. This decision shall also provide notice to the Legislature of this gap in Ho-Chunk law and underscore the need to consider appropriate statutes of limitation for adoption in the future in order to guide the decisions of this Court and parties who wish to bring timely claims.
V. REMAINING LEGAL & FACTUAL ISSUES NEED NOT BE ADDRESSED
Notwithstanding the factual dispute plaintiff raises regarding Jones’ status as tribal chairperson in January 1992, as a result of the aforementioned areas which establish that plaintiff does not present a justiciable case or controversy, the ultimate issue of Jones’ status proves irrelevant and beyond the scope of this decision. Furthermore, the posed dilemma of applicable law which pits the former Wisconsin Winnebago Nation Constitution against the modern Ho-Chunk Nation Constitution need not be resolved as the underlying substantive claims have been rejected. Just as courts should not reach beyond the issue of the case to pass on a constitutional question if the matter may be resolved without such an inquiry, in *236 analogous fashion, this Court exercises judicial restraint when it refuses to attempt to reach beyond substantial jurisdictional bars in order to make needless legal or factual determinations.
CONCLUSION
While the Court does not pass on the wisdom of bringing this matter again through more appropriate parties and under proper causes of action, the far-reaching consequences of such litigation must be carefully weighed and considered. The Court recognizes the clear right of wronged parties to seek a legal or equitable remedy for otherwise justiciable claims. This remedy, however, does not always rest in the hands of the judiciary, nor does it permit the Court to overreach and effectively create a case which might not exist. The desire of a plaintiff to air his complaints does not, and indeed should not, always guarantee him or her the right to a judicial resolution. The defendants’ Motions to Dismiss are hereby granted and this case is dismissed with prejudice. In light of the plaintiffs legal reasoning, which may at best be described as creative, the Court also grants court costs and 25% of attorney’s fees to the defendants to compensate them for the time and effort expended on defending this action.[6] Counsel for defendants are hereby granted 30 days to compile and submit a Cost Bill, itemizing attorney’s fees and other expenses.
All parties have the right to appeal a final judgement or order of the Trial Court. If either party is dissatisfied with the decision rendered by this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days from the date of such final judgement or order is rendered. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice of Appeal must explain the reason the party appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must be in conformity with the requirements set by the Ho-Chunk Supreme Court in accordance with the Ho-Chunk Nation Rules of Appellate Procedure.
The Court gratefully acknowledges the assistance of Trial Court staff attorney Ray Torgerson in the preparation of this opinion.

. Parmenton Decorah, a tribal member elected to the WWBC, was eventually convicted for accepting bribes from Carrie during these same events. U.S. v. Decorah, 46 F,3d 26 (7th Cir.1995).

. Defendants correctly note that this Court is not in the business of issuing decisions based upon hypothetical circumstances, in that such advisory opinions reflect a waste of judicial energy and resources which ultimately amount to a moot exercise where nobody’s rights are determined and no remedy is available.

. Qui tam suits involve claims brought by private parties to assist the executive branch in its enforcement of the law, the violation of which affects the interest of the government and not the individual whose sole motivation is the recovery of a piece of the penalty provided by the underlying statute.

. 25 U.S.C. § 2701 et seq.

.See, United States v. Jenna Corporation of Wisconsin and Glenn V. Corrie, Case No. 91-C-985-S (7th Cir. Jan. 24, 1992) involving civil actions surrounding gaming agreements in the Western District of Wisconsin and Case No. 92-00691 involving bankruptcy proceedings in the Eastern District of Wisconsin.

. The Court finds that the Solicitation to Commit a Felony cause of action is frivolous and should never have been brought in the first place. The Court awards only 25% for attorney's fees in light of the fact that, although unsuccessful, the remaining claims had arguable merit.