*190 ORDER (Partially Granting Plaintiffs Motion for Summary Judgment)
TODD R. MATHA, Associate Judge.
INTRODUCTION
The Court must determine whether to grant the plaintiffs motion for summary judgment. The Court enters a decision partially in favor of the plaintiff, but requires further discovery and submission of legal memoranda to fully address some remaining issues. The below discussion reflects the Court’s careful examination of this case.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail in its October 18, 2004 Order (Granting Plaintiff's Motion). For purposes of this decision, the Court notes that defendants submitted its Defendants’ Answer to Request for Admissions, Request for Production of Documents & Answer to Interrogatories (hereinafter Defendants’ Discovery Response ) on October 27, 2004. The plaintiff filed his November 4, 2004 Motion for Summary Judgment prior to the imposed deadline. Order (Granting Pl.’s Mot.) at 6. Likewise, the plaintiff filed his November 10, 2004 Response to Defendant’s [sic] Motion for Summary Judgement prior to the imposed deadline. Id. Conversely, the defendants failed to file a written response to the plaintiffs dispositive motion. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 19(B).
The Court informed the parties of the date and time of the Motion Hearing/Pre-Trial Conference in its previous order. Order (Granting Pl.’s Mot.) at 6. The Court convened the Hearing/Conference on November 12, 2004 at 9:00 a.m. CST. The following parties appeared at the proceeding: Ronald K. Kirkwood, plaintiff; Attorney James C. Ritland, plaintiffs counsel; and Ho-Chunk Nation Department of Justice Attorney Wendi A. Huling, defendants’ counsel.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Preamble
We the People, pursuant to our inherent sovereignty, in order to form a more perfect government, secure our rights, advance the general welfare, safeguard our interests, sustain our culture, promote our traditions and perpetuate our existence, and secure the natural and self-evident right to govern ourselves, do ordain and *191 establish this Constitution for the Ho-Chunk Nation.
Art. V Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(r) To protect and foster Ho-Chunk religious freedom, culture, language, and traditions;
Art. Vi-Judiciary
Sec. 5. Jurisd iction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Po wers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all wits including attachment and mandamus.
Art. X Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
Art. XI Statutes and Resolutions
Sec. 1. Statutes. All final decisions of the Legislature on matters of permanent interest shall be embodied in statutes. Such enactments shall be available for inspection by members of the Nation during normal business hours.
Sec. 2. Resolutions. All final decisions on matters of temporary interest where a formal expression is needed shall be embodied in a resolution, noted in the minutes, and shall be available for inspection by members of the Nation during normal business hours.
Art. XII Sovereign Immunity
Sec. 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials or employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and Employees. Officials or employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes, of enforcing rights and duties established by this constitution or other applicable laws.
TRIBAL ENROLLMENT AND MEMBERSHIP ACT OE 1995
Sec. 6. Application for Enrollment.
(e) All rights, benefits, privileges, and immunities of Membership shall take effect immediately upon timely approval of an application by the Office of Tribal En *192 rollment. PROVIDED, [tjhat such approval shall not be retroactive.
ELDER PROTECTION ACT OF 2001 (4 HCC § 1)
Sec. 2. , Purpose.
The purpose of this act is to establish Tribal law to protect the Elders of the Ho-Chunk Nation from abuse, neglect, and exploitation. The Ho-Chunk Nation honors, protects, and respects its Elders. Our Elders possess unique and irreplaceable stores of knowledge, skill, and experience that enhance and enrich the lives of the entire Nation. The interests of the Nation, now and in the future, our advanced when our Elders can be confident they can be protected from abuse, neglect, and exploitation and are free to fully participate in the activities and proceedings of the Nation.
HOME OWNERSHIP AND BENEFIT HOUSING PROGRAM FOR THE GENERAL WELFARE OF ELDERS ACT, 8 HCC § 7
Subsec. 1.-Authority.
f. Legislative Resolution 11/07/95D, Medical Care and Priority Housing for the Ho-Chunk SH OG LA, proclaimed that the Elder’s years are limited and their housing needs are critical and that housing for all of the Elders shall have priority over all other segments of the Ho-Chunk population.
Subsec. 2. Finding.⅛ The Legislature of the Ho-Chunk Nation states the following findings.
e. The mortality rate of Ho-Chunk Elders is such that, using an age of sixty (60) years to qualify as an Elder, many Elders will not live long enough to fully enjoy the benefits of the Nation’s Elder housing programs.
Subsec. 5. Goals. The goals of the Home Ownership and Benefit Housing Program for the General Welfare of Elders are as follows.
a. Establish a priority system to ensure those Tribal Elders with the greatest need are served the earliest.
Subsec. 6. Elder Aye Policy. Due to the life expectancy of a Ho-Chunk Elder, the qualifying ages for the Home Ownership and Benefit Housing Program for the General Welfare of Elders are age fifty-five (55) for Elders and age seventy (70) for Elite Elders. Unless specifically exempted, the minimum age of Elder and Elite Elder for other programs administered by the Nation remain at age sixty (60) and eighty (80), respectfully.
Subsec. 7. Definitions.
i. “Elder” means any individual fifty-five (55) years of age or more and is an enrolled Tribal member of the Ho-Chunk Nation for a minimum of five (5) years. Subsec. 8. Application and Eligibility.
c. Eligibility. The HOP staff, or their assigns, shall review applications for program eligibility prior to final approval by the HBÓD. To be eligible for any of the HOP Elder Housing Assistance Plans, the Applicant must meet the following criteria.
(1) Be an enrolled member of the Ho-Chunk Nation, for a period of five (5) [years], as defined by the Constitution of the Ho-Chunk Nation.
Subsec. 9 .Priority arid Ranking.
a. Elder Priority. Elders shall be qualified for assistance under this Act upon reaching age 55, if all eligibility and priority criteria are met, and if funding is available.
b. Annual Ranking of Applications. The applications shall be reviewed by HOP on an annual basis to determine ranking. As paif of the annual ranking, a lottery shall be conducted to prioritize applications with the same age and equal scores, *193 to the extent necessary to determine the applicants selected for home projects during the following fiscal year. The application lottery process shall be overseen by the HBOD.
c. Elder Point Criteria, [incorporates HCN Leg. Res. 08-06-03A appearing below]
HO-CHUNK NATION LEGISLATIVE RESOLUTION 08-06-03A
NOW THEREFORE BE IT RESOLVED, that the Elder Point Criteria shall be amended:
c. Elder Point Criteria
(1) Any approvals prior to the effective date of this policy shall not be effected by the implementation of these new guidelines.
(2) Applicants shall be prioritized for HOP Projects based upon the number of points assigned by the HOP Program Application on the basis of the following criteria:

Points Criteria

100 Points shall be provided to Ho-Chunk Nation enrolled applicant whose enrollment date is 1978, or prior; and
5 Points shall be provided to Ho-Chunk Nation enrolled applicant per year beginning in 1979, and for every year of enrollment thereafter;
100 Points shall be provided to Ho-Chunk Nation enrolled applicants who are actively serving or have actively served in the United States Armed Forces as demonstrated through a DD214 Form.
50 Points shall be provided to Ho-Chunk Nation enrolled applicants with a 40% or more official military disability received during official military duty or related official activity.
(3) The points claimed in an application shall be re-certified annually on the anniversary date of the application. Failure of an applicant to submit re-certification will make the applicant ineligible for annual ranking points.
BE IT FURTHER RESOLVED, that the Ho-Chunk Nation Legislature hereby adopts the amended Elder Appoint [sic ] Criteria for the Elder Home Ownership Program Policy set forth hereinabove.
HO-CHUNK NATION LEGISLATIVE RESOLUTION 06-06-O0E
WHEREAS, the Nation adopted the Sha Og La [sic] Resolution 11/07/95-D to give Elders priority over all others in order to fulfill their housing needs; and ⅞£ ⅝ ⅜ ⅜
WHEREAS, the Nation adopted the Amendment to Home Ownership Policy Eligibility Requirements 08/18/98-B to restrict participation to those members whom have been enrolled for a period of not less than five (5) years, including the Elders; and
WHEREAS, the Nation finds that the needs of the Elders identified in the original Elder Housing Strategic Plan have been met, but that an additional fifty-five (55) Elders approved for Housing and twelve (12) Elders with pending files for approval, meeting the five (5) year enrollment restriction by July 1, 2000, are in need of appropriate funds; and
WHEREAS, the Nation adopts a plan to fund these sixty-seven (67) Elder Housing Strategic Plan files at $125,000.00 each for a total of $8,375,000.00 using the balance of restricted funds in the approximate amount of $2,800,000.00, and the remaining approximate amount of $5,600,000.00 to be paid from the General Revenue in equal quarterly payments during the next fiscal year.
NOW THEREFORE IT BE RESOLVED, that the Ho-Chunk Nation hereby adopts the Amended Appropriation to Extend the Elder Housing Strategic Plan to approve the funding of these 67 additional Elders in need of Housing.
*194 HO-CHUNK NATION LEGISLATIVE RESOLUTION 08-18-981!
WHEREAS, a revision of those manuals [for the Nation’s New Home Construction, Mortgage, Refinancing, and Existing Home Purchase programs under the Nation’s Home Ownership Program]is currently under consideration by the Legislature and in draft form provides for a restriction on eligibility for participation in the Home Ownership Program to those Members who have been enrolled for a period of not less than five years;
WHEREAS, it is the sense of the Legislature that the restriction on participation in the Home Ownership Program to Members who have been enrolled for at least five years is consistent with the will of the majority of Tribal Members and is an appropriate revision to the Home Ownership Manual; and
WHEREAS, prior to the completion and Legislative approval of the revised Home Ownership Manual it is necessary to select a new pool of approved files so that the Program can continue pending final approval of the entire new Manual; and
WHEREAS, the Nation’s Housing Board has recommended that the Legislature consider amending the current Home Ownership Manuals, effective for the applications to be selected for fiscal year '98-'99, to impose a five year Enrolled Membership requirement on the participants in the Program to reflect the will of Tribal Membership; and
NOW. THEREFORE BE IT RESOLVED, that the Home Ownership Manuals currently in effect are amended to require that, as a condition for eligibility to receive home ownership assistance under the Program, any applicant whose Home Ownership application was not approved prior to July 1, 1998, must have been enrolled for five years prior to the commencement of the fiscal year in which the approval of such applicant’s file is considered; and
BE IT RESOLVED FURTHER, that participation in the Home Ownership Program and in other Programs of the Housing Department are [sic] not an entitlement, and that the establishment of eligibility criteria for such programs is within the authority of the Legislature, and that nothing contained elsewhere in the statutes and ordinances of the Nation shall be interpreted to limit the effect of the foregoing resolutions.
HO-CHUNK NATION LEGISLATIVE RESOLUTION 11/07/95D
WHEREAS, one of the primary concerns of the Ho-Chunk expressed by many individuals at gatherings has been the SH OG LA. The concerns have been their welfare, and the desire to continue the journey of life with them. This is in order that the legacy of their wisdom and knowledge be passed on to the young in order to retain the tribal culture, traditions and the Ho-Chunk existence. To demonstrate this, it is proper for the Tribe to provide a safe and healthy environment for the Ho-Chunk SH OG LA by prioritizing and making immediate available housing and medical care programs for them. Therefore be it ⅜ * * ⅝
RESOLVED, their years are limited and their housing needs are critical; therefore, the housing for all of the elders shall have priority over all other segments of the Ho-Chunk population.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 19. Filing and Responding to Motions.
■(B) Responses. A Response to a written Motion must be filed at least one (1) day *195 before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other parties within ten (10) calendar days of the date the Motion was filed. The party filing the Motion must file any Reply within three (3) calendar days.
Rule 31. Required Disclosures.
(A)(5) judicial notice shall be taken of and required disclosures shall be made of official documents, public documents, documents subject to public inspection, document and materials of non-executive session, governmental minutes and recordings of a governmental body pursuant to the HCN Open Meetings Act of 1996.
RELEVANT LAW
BILL PROCESS: AMENDED LEGISLATIVE INTERNAL OPERATING RULES OF 1996 [1]

Scope of Rules

These legislative internal operating rules shall apply only to the development or amendment of the following codes as identified in Article V, Section 3 of the Ho-Chunk Nation Constitution:
Membership,

Bill Process

1. Introduction of a bill.
Every bill must be sponsored by a Member of the Legislature.
2. Posting or publishing a bill to inform the public.
Each bill introduced shall be distributed to each Area office and to the Executive Branch.... The Secretary of the Legislature shall conform each bill to a legislatively-approved standard bill format which shall include a statement whether the proposed bill amends or repeals an existing law, and a statement of the fiseal impact of the bill.
3.The Vice President may assign a bill to a legislative Committee or Committees, or the Legislature may proceed on any bill without assignment to any Committee.
The Legislature may establish a deadline for Committee action or may require a Committee to hold a hearing or field hearings on an assigned bill If the Vice President does not assign a bill to a Committee, the Legislature may hold hearings on the bill. The Legislature or a Committee shall provide the public reasonable notice of a hearing in accordance with the Nation’s Open Meetings Law.... The Executive shall be provided a reasonable opportunity to comment on all bills introduced to the Legislature. If the Vice President does not assign a bill to a Committee, the Vice President may specify the number of days the record be held open; if the Legislature assigns the bill to a Committee, the Chairperson of the Committee may specify the number of days that the record be held open.
6. A bill shall be enacted into law upon a majority vote of the Legislature.
7. All statutes and ordinances of the Ho-Chunk Nation shall be codified in a master code called the “Ho-Chunk Code” (HCC).
Resolutions shall be matters of temporary interest and shall be statements of policy.. Resolutions need not have a bill number. Resolutions need not be introduced as a bill and need not be included in the master code.
*196 FINDINGS OF FACT
Pertaining to the questions involved in this decision, the Court finds that “no genuine issue as to material fact” exists, thereby rendering those matters capable of resolution through summary judgment. HCN It Civ. P. 55. The following undisputed facts reflect common assertions of the parties and references to “documents subject to public inspection.” HCN R. Civ. P. 81(A)(5).
1. The parties received proper notice of the November 12, 2004 Pre-Trial Conference/ Motion Hearing.
2. The Court incorporates by reference the Findings of Fact enumerated in the final order of the preceding action. Ronald K. Kirkwood v. HCN Hons. Dep’t et al., CV 02-62, 2004 WL 5595381, 5 Am. Tribal Law 151, 155-58 (HCN Tr. Ct., Jan. 26, 2004) at 7-10.
3. The defendant, Francis Decorah and his predecessors, is/were the Executive Director of the Ho-Chunk Nation Department of Housing (hereinafter Housing Department). The individually named defendants, six (6) housing directors and predecessors, are/were duly nominated and confirmed members of the Housing Department Board of Directors. See Dep’t Of Hous. Establishment & Org. Act Of 2001, 1 HCC § 7.6b. The individually named defendants, eleven (11) legislators and predecessors, are/were duly elected legislative members, representing the five (5) districts of the Ho-Chunk Nation. See Constitution Of The Ho-Chunk Nation (hereinafter Constitution), Art. V, § 1(b).
4. On or after August 18, 1998, the plaintiff would have received approval of his housing application but for the passage of HCN Leg. Res. 08-18-98B. See HCN LEG. MOT. 08-18-98 at 4 (allocating $9,850,978.00 to fund 127 approved and pending elder housing applications, including the plaintiffs application); see also HCN Elder Hous. Strategic Plan, Ch. IV at 4 (envisioning completion of identified elder homes on or before July 1, 2000).
5. Assuming the legality of HCN Leg. Res. 08-18-98B, the plaintiffs elder housing application would have become eligible for approval on or after July 1, 2002. See Dels.’ Ex. D (indicating plaintiffs enrollment date of July 22, 1996); see also HCN Leg. Res. 08-18-98B (requiring enrollment of five (5) years prior to the beginning of the fiscal year in which plaintiff could obtain application approval).
6. Assuming the legality of HCN Leg. Res. 08-18-98B, the plaintiff would have received approval of his housing application on or after July 1, 2002. See Defs.’ Disc. Resp. at 3.
7. The Ho-Chunk Nation Legislature (hereinafter Legislature) articulated the following justification for the passage of HCN Leg. Res. 08-18-98B: “it is the sense of the Legislature that the restriction on participation in the Home Ownership Program to Members who have been enrolled for at least five years is consistent with the will of the majority of Tribal Members .... ” HCN Leg. Res. 08-18-98B at 2.
8. The Legislature articulated no justification for the passage of HCN Leg. Res. 08-06-03A.
9. On August 14, 2003, the plaintiff filed his initial cause of action challenging the above-identified legislative resolutions. Kirkwood, CV 03-62 (HCN Tr. Ct., Jan. 26, 2004) at 1, at 152.
10. At the Pre-Trial Conference/Motion Hearing, the defendants contended that hocak tradition and custom imparted a fundamental right to elders to receive services, including housing, prior to their non-elder counterparts. Pre-Trial Conference/Mot. Hr’g (LPER at 12, Nov. 12, 2004, 10:32:33 (VST).
*197 11. For the purposes of constitutional scrutiny, the defendants advocate utilizing an intermediate level of review for examination of the legislative resolutions. Id. at 11, 10:24:06 GST; see also Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (“[t]o withstand constitutional challenge, ... [the] classification! ] ... must serve important governmental objectives and must be substantially related to achievement of those objectives.”)
12. On November 12, 2004, the defendants presented the Court with an April 27, 2004 Executive Order, which imposed a “moratorium on new home construction and existing home purchases for a minimum [period] of six months.” Defs.’ Ex. E. The Court remains unaware of whether the moratorium exceeded its deadline of October 27, 2004.
DECISION
The defendants enumerated several defenses to the plaintiffs cause of action, and the Court shall address each defense in turn. In doing so, the Court shall examine the nature of its broad jurisdictional grant, distinguishing between its legal and equitable powers. The Court enters this preliminary ruling in the plaintiffs favor due to the defendants’ failure to abide by mandated statutory processes. However, the Court must direct the parties to re-enter discovery because it cannot resolve the ultimate issue based upon the exposed facts.
The Court easily dispenses with a couple of defenses since contingent upon the naming of parties. On September 2, 2004, the plaintiff filed an Amended Complaint in which he added the Housing Department Board of Directors and Legislators as party defendants. The defendants earlier based the defenses of standing and failure to join an indispensable party on the absence of the subsequently named defendants. Defs.’ Br. in Supp. of Mot. far Summ. J. at 2-3; Defs. ’ Answer at 1-2. The plaintiffs amendment to the pleading removes these defenses from further judicial consideration.
The defendants continue to actively assert the following defenses: laches, immunity from suit, and failure to state a claim. Defs.’ Br. in Supp. of Mot. for Summ. J. at 3-5. The Court shall decline to address the latter defense due to its constitutional dimension. The Court does not base its decision on constitutional interpretation in recognition of the cardinal principle that courts should avoid constitutional questions if a judgment may rest on statutory or other grounds. Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932).
Regarding the immunity issue, the Ho-Chunk Nation Supreme Court recently emphasized that “the principle of sovereign immunity exists primarily to protect the public treasury from lawsuits seeking damages. It does not prevent people from suing the HCN government to enforce their rights under the HCN Constitution.” Hope B. Smith v. Ho-Chunk Nation, SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 10; see also Const., Art. XII, § 1-2. A plaintiff must institute such a suit against an official or employee, claiming that the individual “act[ed] beyond the scope of their duties or authority.” Const., Art. XII, § 2. Essentially, the plaintiff seeks to affect the future actions of the official or employee in an effort to avoid a continuing violation of the law. A plaintiff will typically request injunctive relief against the official or employee entrusted with implementing an allegedly illegal statutory provision.
The fact that the ... officer, by virtue of his [or her] office, has some connection with the enforcement of the act, is the important and material fact, and wheth *198 er it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.
Ex Parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
In the instant case, the plaintiff seeks to enjoin the actions of the individual Housing Department Board of Directors and Housing Department Executive Director. The plaintiff attacks the legality of two (2) legislative resolutions, and requests an injunction against further imposition of this legislation. The Court holds that the plaintiffs suit survives the immunity defense, and that it may consider granting prospective injunctive relief, which can possess an ancillary monetary impact. Smith, SU 03-08 at 11; see also Chloris Lowe, Jr. et al. v. HCN Legislative Members Elliot Garvin et al., CV 00-104, 2004 WL 5588795, 5 Am. Tribal Law 160 (HCN Tr. Ct., Mar. 22, 2004).
The Court must now examine the timeliness defense presented by reference to the doctrine of laches. The defendants’ assertion of laches, and not a statute of limitation, signifies that the defendants consider the instant suit as one rooted in equity and not law. The CONSTITUTION provides that “[t]he Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity.... ” Const., Art. VII, § 5(a). However, while the Court distinguishes between criminal and civil causes of action, it has not distinguished between legal and equitable causes of action. Instead, the Judiciary has focused upon the character of the relief, identifying certain forms of relief as equitable as opposed to legal. See e.g., Robert. A. Mudd v. HCN Legislature et al., SE 03-02 (HCN S.Ct., Apr. 8, 2003) at 6, n. 2; Smith, SU 03-08 at 11; Millie Decorah, as Fin. Dir. of the HCN, et al. v. Joan Whitewater, SU 98-02 (HCN S.Ct., Oct. 26, 1998) at 4; HCN Election Bd. v. Robert A Mudd, SU 97-05 (HCN S.Ct., Oct. 28, 1997) at 5.
The legal/equitable dichotomy derives from the historical position of the church in Anglo government. The Court of Chancery, or court of equity, developed in fifteenth century England to provide remedies not obtainable in the courts of law. The Lord High Chancellor presided over the court, and received his ecclesiastical appointment from the king. Litigants would petition the king for permission to present their controversy before the court since one could not proceed to the Court of Chancery as a matter of right. Oftentimes, if a potential money damage award available from the courts of law would prove insufficient to rectify a harm, then a litigant would attempt to secure alternative relief from the court of equity.
The courts of law developed a body of case precedent by resort to long-standing tradition and custom. Through this process, the courts of law generated a known canon of common law. The quintessential remedy associated with the courts of law was money damages. Secular judges could affect justice by rearranging the established positions of the parties, whereas the ministerial Chancellor could achieve justice by impacting future events. The distinction between retroactive and prospective application continues to mark the difference between legal and equitable relief.
The Court of Chancery eschewed the principle of stare decisis due to its commitment to case-by-case adjudication. The Chancellor relied instead on notions of natural justice, and awarded equitable remedies, principally injunctive relief. The Chancellor maintained immense discretionary authority as opposed to the common law judges who needed to rigidly adhere to established legal dictates. As a corollary, while parties could demand legal relief, *199 litigants could only request equitable relief due to its extraordinary character.
The courts of equity and law coexisted for centuries before a monumental change in the eighteenth century. A series of Chancellors began to formalize equitable procedure and base decision-making upon resort to case precedent. This transformation occurred amidst increasing charges of arbitrary and inconsistent adjudication. As a result, the Court of Chancery departed from its theological foundation and strict reliance upon ecclesiastical discretion.
Regardless, the emerging American judicial system integrated traditional models of the Court of Chancery despite many state and federal courts sitting simultaneously as both equitable and legal tribunals, including the United States Supreme Court (hereinafter U.S. Supreme Court). The U.S. Supreme Court entertained seventeen (17) equitable disputes during its first twelve (12) years in existence, but only cited to two (2) cases in the resulting decisions. This aversion to precedential authority in equitable cases ended with the appointment of Chief Justice John Marshall on February 4, 1801, by President John Adams. Chief Justice Marshall gradually elevated the importance of adherence to stare decisis and standardized procedure in all cases and controversies.
Thereafter, formal distinctions between legal and equitable causes of action began to erode, but courts continued to differentiate between the filings. The convergence of legal and equitable case practice culminated in the adoption of the Federal Rules Of Civil Procedure in 1938. See 28 U.S.C. § 2072 (2005). Legal and equitable causes of action now share the common designation as civil causes of action.[2] Yet, courts and practitioners still observe the historical categorization of civil suits. In 1949, the U.S. Supreme Court remarked: “[notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected.” Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382 n. 26, 69 S.Ct. 606, 93 L.Ed. 741 (1949). The focus, however, largely shifted to the manner of relief afforded and away from the nature of the claim asserted, although not entirely. Id.
In relation to the instant case, the constitutional drafters formed Article VII against the foregoing backdrop, recognizing that the phrase “in law or in equity” carried an intrinsic and well-understood meaning. Const., Art. VII, § 5(a). The Court has made similar unremarkable and indisputable observations in the past. See e.g., Chloris Lowe, Jr. v. HCN Legislative Members Elliot Garvin et al., CV 00-104 (HCN Tr. Ct., Mar. 30, 2001) at 4 (identifying the origin of the tribal one-person/one-vote principle); Parmenton Decorah v. HCN Legislature et al, CV 99-08 (HCN Tr. Ct., July 1, 1999) at 8 (identifying the origin of the tribal Bill of Rights). The plaintiff clearly presents an equitable cause of action, and the defendants’ choice of defenses corroborates this fact.
 The plaintiff requests injunctive relief against the defendants, asking the Court to coerce future official actions, and the defendants respond to the plaintiffs request by raising the doctrine of laches.
From the beginning, equity, in the absence of any statute of limitations made *200 applicable to equity suits, has provided its own rule of limitations through the doctrine of laches, the principle that equity will not aid a plaintiff whose unex-oused delay, if the suit were allowed, would be prejudicial to the defendant.
Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (11140). A statute of limitation would apply to an equitable cause of action only when a court could exercise concurrent jurisdiction at law or when a plaintiff sought equitable relief for violation of a legal right. Id. at 287-89, 60 S.Ct. 527. “But where the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, ... statutes of limitations barring actions at law are inapplicable. ...” Id. at 289, 60 S.Ct. 527.
Statutes of limitation did not historically bar equitable claims due to the ongoing status of the harm. See generally Kenneth L. Twin v. Douglas Greengrass, Exec. Dir. of Admin., CV 03-88 (HCN Tr. Ct., Oct. 7, 2004) (discussing the operation of statutes of limitation). Furthermore, “laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of ... the parties.” Galliher v. Gadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738 (1892). A court’s attention must focus upon the resulting inequity or prejudice, if any, and not solely the issue of timeliness because “[wjhile laches is often spoken of as the equitable equivalent of the legal statute of limitations, ... there is no fixed time which makes it an absolute bar.”[3] Wagg v. Herbert, 215 U.S. 546, 553, 30 S.Ct. 218, 54 L.Ed. 321 (1910) (referring to an equitable suit in which the U.S. Supreme Court reached the merits nineteen (19) years after the cause of action arose).
The Court earlier adopted a three-part test for determining the proper application of the doctrine of laches. A defendant must demonstrate: “1) unreasonable delay, 2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which hel/she] bases his[/her] suit, and 3) prejudice to the party asserting the defense in the event the action is maintained.”[4] Steve B. Funmaker v. JoAnn Janes et al., CV 97-72, 1997 WL 34671359, 1 Am. Tribal Law 223 (HCN Tr. Ct., Nov. 26, 1997) at 14 (citing Andersen v. Kojo, 110 Wis.2d 22, 27, 327 N.W.2d 195 (Wis.Ct. App.1982). The Court must determine whether the defendants have satisfied each prong of the test in the case at bar.[5] The Court does not need to proceed past the *201 final prong because the defendants presented absolutely no allegations of prejudice. Moreover, the defendants’ request for summary judgment belies any claim of prejudice capable of substantiating the assertion of a doctrine of laches defense. The factual information upon which this case rests is easily ascertainable despite the defendants’ penchant for supplying ambiguous discovery responses.
Having dispensed with the proffered defenses, the Court will now consider the plaintiffs substantive claims. As stated above, the Court renders this decision on the basis of statutory analysis, preserving the opportunity to address the constitutional issues in the future. The Court limits its opinion to an examination of a single legislative resolution, and will offer direction concerning the procedure for resolving the remaining issues.
On August 18, 1998, the Legislature passed a resolution for the purpose of erecting “a condition for eligibility to receive home ownership assistance.”[6] HCN Leg. Res. 08-18-98B at 2. Specifically, “any applicant whose Home Ownership application was not approved prior to July 1, 1998, must have been enrolled for five years prior to the commencement of the fiscal year in which the approval of such applicant’s file is considered Id. The Legislature emphasized “that participation in the Home Ownership Program and in other Programs of the Housing Department are [sic] not an entitlement, and that the establishment of eligibility criteria for such programs is within the authority of the Legislature.” Id.; see also Const, Art. V, § 2(a). Finally, the Legislature stressed “that nothing contained elsewhere in the statutes and ordinances of the Nation shall be interpreted to limit the effect of the foregoing resolutions.” HCN Leg, Res. 08-18-98B at 2.
The Court agrees with the legislative characterization of home ownership assistance. The Ho-Chunk Nation may only afford such assistance when financially capable of doing so, negating any designation as an entitlement. Yet, this noted agreement does not resolve the dispute since “[a]ll rights, benefits, privileges, and immunities of Membership shall take effect immediately upon timely approval of an *202 application by the Office of Tribal Enrollment!,]” and the plaintiff became enrolled on July 22, 1996. Tribal Enrollment & MEMBERSHIP Act: of 1995 (hereinafter Membership Act), § 6(e). The Court must unsurprisingly designate the possible receipt of a minimum $100,000.00 housing grant as a benefit. See Elder Housing Act, § 7.2e (describing housing assistance as a benefit).
Therefore, the Legislature violated the plaintiffs right to full and equal enjoyment of the benefits associated with tribal enrollment. To be sure, perhaps not every affected adult member would have received the entitlement, but HCN Leg. Res. 08-18-98B erects an absolute bar against consideration and possible approval for a period of five (5) years regardless of one’s eligibility. The plaintiff would have received the entitlement but for the five (5) year restriction, which runs afoul of the guarantee conferred by the Membership Act.
The Legislature attempted to guard against this possibility by declaring the supremacy of the resolution within the body of the text. However, the Legislature could not modify the protections afforded by the Membership Act without complying with the dictates of the former Bill Process rales. For example, the rules required that the Legislature present the amendment in bill format and publish for public comment. Bill Process, § 2. The Legislature did not satisfy these or other procedural or substantive requisites.[7] Furthermore, the Legislature may not constitutionally elevate a resolution above a statute due to the recognized hierarchy of laws. Const., Art. XI, §§ 1-2.
Consequently, the Court could have entered appropriate injunctive relief had the plaintiff filed his suit during the period of time from August 18, 1998 to August 5, 2003. The plaintiff, however, initiated his cause of action on August 14, 2003. As of August 6, 2003, the state of the law changed with the introduction of the “Elder Point Criteria.” HCN Leg. Res. 08-06-03A. Due to the presence of sovereign immunity, the Court may not award retroactive injunctive relief against an official or employee.
The granting of such relief would constitute compensation for a past statutory violation, which directly equates with a legal claim for monetary damages. The Court may not consider this option due to the absence of any express waiver of sovereign immunity from suit. Const., Art. XII, § 1. The U.S. Supreme Court has “refused to extend the reasoning of [Ex Parte] Yawng ... to claims for retroactive relief,” and this Court joins in this refusal. Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L,Ed.2d 371 (1985). A court cannot enjoin the occurrence of a past action, and simply identifying the manner of relief as equitable is both disingenuous and of no consequence. Edelman v. Jordan, 415 U.S. 651, 666, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The distinction between retroactive and prospective relief proves vitally important when adjudging a suit in equity. Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).
The Court must consider the plaintiffs claims under the current status of the law. Unfortunately, the Court cannot continue its analysis without a further disclosure of relevant facts. The Court, therefore, re *203 opens the discovery period as opposed to proceeding to trial. The Court maintains discretion to enter such a ruling. See Regina K. Baldwin et al v. Ho-Chunk Nation et al., SU 02-01 (HCN S.Ct., Feb. 15, 2002) (confirming that the Court possesses authority to extend discovery for the purpose of rendering a final judgment).
The Court foresees the necessity of performing a two-fold inquiry. First, the Court must determine whether the practical effect of the “Elder Point Criteria” is to absolutely bar the plaintiff from housing assistance, thereby violating the Membership Act in the same manner as detailed above.[8] The Elder Housing Act recognizes that “[t]he mortality rate of Ho-Chunk Elders is such that, using an age of sixty (60) years to qualify as an Elder, many Elders wall not live long enough to fully enjoy the benefits of the Nation’s Elder housing programs.” Elder Housing Act, § 7,2e. Consequently, does the “Elder Point Criteria” act to deny the plaintiff, an elite elder, any reasonable hope of securing assistance based upon the number of younger applicants, elder and soon-to-be elders, with a greater accumulation of points due to length of enrollment? Id., § 7.6. The Court will presume that the Legislature adopted the “Elder Point Criteria” in response to the existing and reasonably foreseeable fiscal environment.
The plaintiff must deliver discovery requests to the defendants on or before Friday, February 25, 2005. The defendants must provide timely and forthright responses within twenty-five (25) calendar days of receipt. The parties may request an extension of the timeframes upon a showing of good cause.
Second, if the “Elder Point Criteria” does not constitute an absolute bar, then the Court must determine the constitutionality of the same. The Constitution reflects the People’s resolute intention of sustaining and promoting tradition and culture, including the respect and reverence due tribal elders. Const., pmbl, Art. V, § 2(r); see also Elder Protection Act Of 2001, 4 HCC § 1.2. The Legislature adopted the “Elder Point Criteria” without articulating any justification for its existence, and the criteria undeniably discriminates against recent elder enrollees.
The parties must provide legal memo-randa to the Court on or before Friday, April 8, 2005, addressing the outstanding constitutional and statutory issues. In arguing whether the noted discrimination constitutes a violation of equal protection, the parties should answer, at a minimum, the following questions: 1) what level of constitutional scrutiny should the Court employ in its examination of the “Elder Point Criteria;” 2) what justification exists for the “Elder Point Criteria;” 3) should the Court accept a post hoc justification; 4) how does the “Elder Point Criteria” aid in accomplishing the identified goals of the Elder Housing Act, specifically the goal of “ensur[ing] th[at] Tribal Elders with the greatest need are served the earliest,” Elder Housing Act, § 7.5a; and 5) how does the “Elder Point Criteria” comport with HCN Leg. Res. 11-07-951)? The parties may likewise request an extension of the timeframe upon a showing of good cause.
IT IS SO ORDERED' this 11th day of February 2005, by the Ho-Chunk Nation Trial Court located in Black River Falls, *204 WI within the sovereign lands of the Ho-Chunk Nation.

. The Bill Process rules provided the legal backdrop against which the Ho-Chunk Nation Legislature adopted HCN Leo. Res. 08-18-98B, and have since been substantially incorporated within the Legislative Organiza. tion Act of 2001, 2 HCC § II.

. The Court composed the preceding historical account by reference to two (2) secondary resources. John R. Kroger, Supreme Court Equity, 1789-1835, and the History of American Judging, 34 Hous. L.Rev. 1425 (1998); Kevin C. Kennedy, Equitable Remedies and Principled Discretion: The Michigan Experience, 74 U. Det. Mercy L.Rev 609 (1997).

. Equity does recognize the presence of gross laches where "the passage of a great length of time creates a nearly insurmountable burden on the plaintiffs to disprove the obvious defense of laches.” County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 266, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (Brennan, X, dissenting). In raising such a defense, the timeframe must be “so prolonged that in the normal course of events evidence is lost or obscured.” Russell, 309 U.S. at 287, 60 S.Ct. 527.

. In its examination of the operable facts, the Court commented that "Lsjtatutefs] of limitation! J were created to address such concerns of timeliness, and, in their absence, the common law doctrine of laches serve! dj as an equitable tool to protect parties from defending against claims which they reasonably icouldj not expect to be resurrected." Funmaker, CV 97-72 at 14-15, at 234-35. However, as noted above, the doctrine of laches neither arises from the common law tradition nor acts to defeat purely legal claims.

.The Ho-Chunk Nation Supreme Court (hereinafter HCN Supreme Court) later noted its acceptance of this Court's adoption of the doctrine of laches. HCN Gaming Commn'n v. Wallace Johnson, SU 98-05 (HCN S.Ct., Oct. 21, 1998). Unfortunately, despite the obvious application of a statute of limitation, the Wal- *201 nt» Court needlessly included a discussion of laches, stating that ‘‘[t]he interlocutory appeal ... is REVERSED according to the doctrine of laches enacted by the HCN Legislature Resolution 2/2G/96B,' HCN law.’’ Id. at 3 (citing HCN Gaming Ordinance, § 1101 (c)(i) (imposing a forty-five (45) day deadline to file an initial pleading)) (emphasis in original). In fact, legislative bodies do not enact such doctrines, but may possibly choose to codify the defense. The Court, however, cannot envision a circumstance where laches would bar a suit after the passage of a month and a half. The HCN Supreme Court cited Trial Court decisions that appeared to lend credence to this manner of analysis, noting that ‘‘[t]he Trial Court’s own precedent casefsj followed the doctrine of laches. ..." Wallace, SU 98-05 at 2 (citing Lance Meronek v. Ho-Chunk Nation et al., CV 98-15 (HCN Tr. Ct., July 17, 1998) and Jaqueline R. Nichols v. Randy Snowball, CV 97-167 (HCN Tr. Ct., Apr. 15, 1998) (employing laches to dismiss suits where the plaintiffs failed to timely file initial administrative grievances within five (5) days of the cause of action)). Each trial level opinion should have more appropriately centered upon the defenses of sovereign immunity and failure to exhaust administrative remedies, and not laches or even a statute of limitation. See Kenneth L. Twin v. Toni McDonald et al., CV 04-27 (HCN Tt. Ct , Nov. 12, 2004); Twin, CV 03-88. Additionally, the HCN Supreme Court subsequently confirmed that Trial Court case law does not possess any prece-dential authority. Jacob LoneTree et al. v. Robert Funmaker, Jr. et al, SU 00-16 (HCN Tr. Ct., Mar. 16, 2001) at 4.

. The Legislature has since codified the substance of the resolution in statutory form. Home Ownership & Benefit Hoijs. Program For The Gen. Welfare of Elders Act (hereinafter Elder Housing Act), 8 HCC § 7.7i, 8c(1).

. The HCN Supreme Court previously stated that it "supports the 'Bill Process Act’ as it reassures the Ho-Chunk Nation tribal members that the Legislative body cannot pass bills into law without public input, for or against it [sic] prior to any legislative enactment.” HCN Election Bd. et al. v. Aurelia L. Hopinkah, SU 98-08 (HCN S.Ct.. Apr. 7, 1999) at 5.

. The Court has attempted to read the Membership Act and the Elder Housing Act in pari materia, but cannot reconcile the relevant statutory mandates of the respective laws. See Theresa Lynn Hendrickson v. HCN Office of Tribal Enrollment, SU 02-06 (HCN S.Ct. Mar. 21, 2003) at 2-3, 7-8.